# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| In re  UNDER ARMOUR | | |
| SECURITIES LITIGATION | * | Civil Action No.: RDB-17-0388 |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Aberdeen" or "Lead Plaintiff") and Monroe County Employees' Retirement System ("Monroe") (collectively, "Plaintiffs") bring this putative class action against Under Armour, Inc. ("Under Armour" or "the Company") and Kevin A. Plank ("Plank") (collectively, "Defendants") alleging violations of federal securities laws. (Consol. Second Am. Compl., ECF No. 78.)[1]  Plaintiffs bring this federal class action under the Securities Exchange Act of 1934 ("Exchange Act") §§ 10(b), 20(a), and 20A, 15 U.S.C. §§ 78j(b), 78t(a), 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs purport to represent a class of all persons or entities that purchased or acquired common stock of Under Armour between September 16, 2015 to January 30, 2017, inclusive ("Class Period"), and who were damaged thereby. (ECF No. 78 at ¶ 2.)

Currently pending before this Court are three motions: (1) Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 80); (2) Defendants'

---

[1]     On September 19, 2018, this Court granted Defendants' dismissal motions related to the [Corrected] Consolidated Amended Complaint (ECF No. 51).  *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658 (D. Md. 2018).  Plaintiffs note that they have not repleaded the Securities Act claims that were dismissed with prejudice but reserve the right to appeal the dismissal. (Consol. Second Am. Compl. 1 n.1, ECF No. 78.)

Motion to Strike the Declarations of Mark A. Cohen and Professor M. Todd Henderson (ECF No. 79); and (3) Plaintiffs' Motion to Strike Exhibits 21, 23, and 24 Attached to Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 88). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018).

For the reasons that follow, this Court shall GRANT Defendants' dismissal motion, and shall also GRANT both parties' motions to strike. Specifically, this Court concludes that Plaintiffs have failed to meet the burden imposed upon them by the heightened pleading standards to which the Exchange Act claims of Count I are subject. Therefore, Count I shall be dismissed with prejudice. Since Count I must be dismissed, Counts II and III also fail because they are each dependent upon a predicate violation of the Exchange Act.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Khoja v.*

*Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (clarifying the proper use of judicial notice and incorporation-by-reference in securities litigation).[2]

In brief,[3] Under Armour is a Maryland-based sports apparel company that sells branded athletic apparel, footwear and accessories worldwide. (ECF No. 78 at ¶ 4.) Since its formation in 1996, the Company grew to become a leading premium sportswear brand, achieving the position of number two sportswear brand by revenue in the United States by 2014. (*Id.* at ¶¶ 5-6.) By capitalizing on its premium brand image and reputation for state-of-the-art fabrics, Under Armour reported 26 consecutive quarters of 20% or more compounded annual growth between 2010 and 2016. (*Id.* at ¶ 6.) Plank is the Company's founder, Chief Executive Officer, Chairman of the Board, and largest shareholder. (*Id.* at ¶ 24.)

Plaintiffs allege generally that beginning in September 2015, Defendants' public statements concealed that they knew consumer demand for Under Armour's products was declining, so the Company abandoned its "brand strength over price" sales philosophy and resorted to discounting, which led to Under Armour's stock prices being artificially inflated by lower-margin sales and international expansion. (*Id.* at ¶¶ 9-12.) In January 2016, Morgan Stanley & Co. LLC ("Morgan Stanley")[4] published a report relying on industry sales data that revealed Under Armour's average-sales-price and market-share decline, which started a

---

[2]     Before reaching the substantive matters of the instant motion to dismiss, this Court shall first address the motions to strike. In any event, this Court identifies herein any judicially-noticed facts taken from Defendants' exhibits.

[3]     This Court provided a detailed background in its September 19, 2018 decision and incorporates it herein. *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658 (D. Md. 2018).

[4]     Morgan Stanley is an American multinational investment bank and financial services company that has a reputation as a leader in the field of investment research. Plaintiffs reference multiple research reports, referred to as the Morgan Stanley Reports, that were published between January 2016 and February 2017 and included commentary about Under Armour's stock.

corresponding decline in the Company's stock prices. (*Id.* at ¶ 13.) Plaintiffs also allege that Plank "personally cashed in on" the stock's artificial inflation by selling a substantial amount of his stock in the Company during the Class Period. (*Id.* at ¶ 12.)

The initial Complaints alleging violations of federal securities law were filed in February and March 2017 and were consolidated on March 23, 2017.[5] A Consolidated Amended Complaint was filed on August 9, 2017, claiming four causes of action: Counts I and II for violations of the Securities Act[6] and Counts III and IV for violations of the Exchange Act[7]. (ECF No. 30.) On September 18, 2018, this Court granted Defendants' dismissal motions, dismissing the Securities Act claims (Counts I and II) with prejudice, and dismissing the Exchange Act claims (Counts III and IV) without prejudice. *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658 (D. Md. 2018). By their Consolidated Second Amended Complaint (ECF No. 78), filed on November 16, 2018, Plaintiffs have dropped all defendants except for Plank and Under Armour, contending that the prior pleading deficiencies have been remedied and that all necessary elements have been adequately alleged to establish that Plank and Under Armour violated §§ 10(b), 20(a) and 20A of the Securities Exchange Act of 1934. (Pls.' Resp. 1, ECF No. 86.) By the Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint, the Defendants seek the dismissal with prejudice of Plaintiffs' claims. (Defs.' Mot.,

---

[5]     *Brian Breece v. Under Armour, Inc., et al*, Case No. 17-0388-RDB filed February 10, 2017 (bringing Exchange Act claims); *Jodie Hopkins v. Under Armour, Inc., et al*, Case No. 17-0452-RDB filed February 16, 2017 (bringing Exchange Act claims); and *Ben Stenger v. Under Armour, Inc., et al*, filed March 2, 2017 (bringing Exchange Act claims). No Securities Act claims were brought against any defendant prior to their inclusion in the [Corrected] Consolidated Amended Complaint, ECF No. 30, on August 9, 2017.

[6]     Securities Act of 1933 ("Securities Act") §§ 11, 15, 15 U.S.C. §§ 77k, 77o, and the rules promulgated thereunder.

[7]     Securities Exchange Act of 1934 ("Exchange Act") §§ 10(b), 20(a), 15 U.S.C. §§ 78j(b), 78(t)(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

ECF No. 80.) Defendants assert that Plaintiffs have added no new factual allegations and still fail to plead scienter as to either Plank or the Company, the only two remaining defendants. (Mot. Mem. 1, ECF No. 80-2.)

Defendants further contend that Plaintiffs have attempted to address the deficiencies in their pleadings by adding declarations from "expert" witnesses to support their conclusions. (*Id.* at 2.) By the Defendants' Motion to Strike the Declarations of Mark A. Cohen and Professor M. Todd Henderson, the Defendants move this Court to strike the declarations and disregard the opinions expressed in them. (ECF No. 79.) Defendants assert that an expert report attached to a complaint is not a "written instrument" under Rule 10(c) of the Federal Rules of Civil Procedure and that opinions cannot act as substitutes for facts under the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*

Finally, Plaintiffs seek to have this Court strike certain exhibits attached to Defendants' Motion to Dismiss. (ECF No. 88.) Specifically, Plaintiffs move, pursuant to the PSLRA and Rule 12(f) of the Federal Rules of Civil Procedure, to strike Exhibits 21, 23, and 24 attached to Defendants' Motion to Dismiss and to strike all references to, and assertions based upon, those materials. (*Id.*) Defendants contend that the three documents are not incorporated by reference nor or they the proper subjects of judicial notice and are attached for the improper purpose of rebutting Plaintiffs' allegations of scienter. (Pls.' Mot. Mem. 4, ECF No. 88-1.)

This Court shall address first the motions to strike and then the substantive motion to dismiss. For the reasons that follow, this Court shall GRANT all three motions. Specifically, this Court concludes that Plaintiffs have failed to meet the burden imposed upon them by the

heightened pleading standards to which the Exchange Act claims of Count I are subject. Therefore, Count I shall be dismissed with prejudice. Since Count I must be dismissed, Counts II and III also fail because they are each dependent upon a predicate violation of the Exchange Act.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), require that complaints in civil actions be alleged with greater specificity than previously was required. While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678. A complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

Most importantly, this Court has noted that a claim for securities fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b). *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 634 (D. Md. 2010). Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged

fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.,* 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

The Private Securities Litigation Reform Act further requires a securities fraud claim to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1), (b)(2)). These heightened pleading standards in the securities fraud context are demanding but were implemented because Congress recognized that there was potential for abuse. *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008). Courts were charged to "be vigilant in preventing meritless securities fraud claims from reaching the discovery phase of litigation" and "instructed courts to dismiss any securities fraud complaint that does not" plead a strong inference of scienter. *Id.* (citing 15 U.S.C. § 78u–4(b)(2)).

# ANALYSIS

## I.    Motions to Strike

Necessarily, this Court shall begin its analysis by determining which exhibits are properly before the Court at this time.  The parties have requested that this Court strike several items: (1) two expert declarations attached to the Plaintiffs' complaint; and (2) three exhibits attached to the Defendants' dismissal motion. (ECF Nos. 79, 88.)

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on its own or on a party's timely motion. Fed. R. Civ. P. 12(f). In *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001), the United States Court of Appeals for the Fourth Circuit noted that, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic' " (citing 5A C. Wright & A. Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990)). *See also Stockart.com, LLC v. Caraustar Custom Packaging Grp., Inc.*, RDB-05-2409, 240 F.R.D. 195, 199 (D. Md. 2006).  However, if "the pleading is obviously insufficient as a matter of law," a court has discretion to grant a motion to strike.  *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 222 (S.D.N.Y.  2018) (citations omitted).

### A.    Declarations Attached to the Complaint

Plaintiffs argue that the expert declarations attached as Exhibits D and E to the Second Amended Complaint qualify as "written instruments" under Fed. R. Civ. P. 10(c).  (ECF No. 87 at 7.)  Plaintiffs assert that the declarations are integral to the complaint, are incorporated

by reference, and their authenticity is not challenged. (*Id.* at 8.) Further, Plaintiffs rely on them to "explain key specific facts" supporting their allegations of scienter. (*Id.*)

"A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). The Fourth Circuit has not specifically addressed whether declarations are permissible attachments to pleadings under Fed. R. Civ. P. 10(c). *See Occupy Columbia v. Haley*, 738 F. 3d 107, 116-17 (4th Cir. 2013) (commenting on there being no uniform rule among the circuits with respect to whether affidavits are "written instruments" that may be considered in resolving a dismissal motion).

Further, some district courts have accepted affidavits or declarations for purposes of evaluating a dismissal motion, while other district courts have not. *Compare Malinowski v. Lichter Grp., LLC*, Civil No. WDQ–14–917, 2015 WL 857511, at *4 (D. Md. Feb. 26, 2015) ("Documents contemplated by Rule 10(c) include 'contracts, notes, and other writing[s] on which [a party's] action or defense is based,' but not affidavits.") (quoting *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989)); and *Copeland v. Aerisyn, LLC*, No. 1:10–CV–78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011) ("An 'instrument' is defined by Black's Law Dictionary (9th ed. 2009) as '[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate.'"); *with Alvarez–Soto v. B. Frank Joy, LLC*, 258 F. Supp. 3d 615, 623 (D. Md. 2017) (considering declarations attached to the complaint but not those attached to the motions); and *Reaves v. Am. Home Mortg. Servicing, Inc.*, No. 5:15-CV-180-FL, 2017 WL 9478517, at *3 (E.D.N.C. Aug. 21, 2017) ("The court

'may properly take notice of matters of public record' and 'may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'") (quoting *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Importantly, this case is subject to a heightened pleading standard. Complaints filed under the PSLRA "must allege specific facts demonstrating material misstatements or omissions made with scienter. Even if non-opinion portions of an expert's affidavit constitute an instrument pursuant to Rule 10, opinions cannot substitute for facts under the PSLRA." *Fin. Acquisition Partners LP v. Blackwell*, 440 F. 3d 278, 286 (5th Cir. 2006). As this Court has previously noted, "Plaintiffs may not substitute factual allegations with the speculation of their expert witness." *Lerner v. Northwest Biotherapeutics*, 273 F. Supp. 3d 573, 590 (D. Md. 2017). In the context of securities fraud complaints, courts have stricken a declaration where plaintiffs asked the court to consider it for the truth of its opinions, *see Ong*, 294 F. Supp. 3d at 209, but at least one court has allowed a declaration when used "merely to buttress" the plaintiffs contentions, *see In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011). It is apparent that both the context of the case and the purpose of the declarations are important elements for a court to evaluate when considering whether to strike the documents.

In this case, Plaintiffs contend that the declarations "only serve to support and help explain the allegations" in the complaint. (ECF No. 87 at 10.) Therefore, they do not form the basis of the complaint, are not integral to the complaint, and this Court will not refer to them as a substitution for its own analysis. This Court's evaluation of a motion to dismiss accepts as true all the factual allegations, so "buttressing" and external support are unnecessary.

*See Twombly*, 550 U.S. at 555-56.  However, this Court also distinguishes factual allegations from "mere conclusory statements," opinions, or legal conclusions.  *Iqbal*, 556 U.S. at 678.  Expert opinions generated for purposes of supporting Plaintiffs' theories in a third version of their complaint do not warrant the assumption of truth.

Accordingly, this Court shall GRANT Defendants' Motion to Strike the Declarations of Mark A. Cohen and Professor M. Todd Henderson (ECF No. 79).  However, any factual allegations in the Second Amended Complaint that were derived from the expert reports, if any, shall be accorded the consideration due to factual allegations in a dismissal context.

### B.      Defendants' Exhibits Attached to Motion

Plaintiffs note that Defendants submitted 32 exhibits spanning nearly 1,700 pages.  (Pls.' Mot. Mem. 1, ECF No. 88-1.)  Plaintiffs move to exclude three exhibits that they contend are not incorporated by reference or subject to judicial notice.  (*Id.* at 2.)  Defendants argue that the challenged exhibits are subject to judicial notice.  (ECF No. 92 at 2.)  The three challenged exhibits include a press release filed with the United States Securities and Exchange Commission ("SEC") and two Maryland state court filings.  (*Id.*)  Defendants assert that the documents are publicly filed documents offered for the limited purpose of establishing the timing of events to which they relate and not to establish the truth of the matters contained therein.  (*Id.*)

"[C]ourts are permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  Under Federal Rules of Evidence 201, facts that are not "subject to reasonable dispute" may be judicially noticed.  Fed. R. Evid.

201(b). If a fact is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," then it is "not subject to reasonable dispute." *Id.* If a court considers such facts at the motion to dismiss stage, the facts must be construed "in the light most favorable to the plaintiffs." *Zak*, 780 F.3d at 607 (citation omitted).

As this Court previously noted, in August 2018, the Ninth Circuit clarified the proper use of judicial notice and incorporation-by-reference in securities litigation. *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d at 667 n. 3 (citing *Khoja*, 899 F.3d 988). In *Khoja*, the Ninth Circuit reminded district courts that generally, if materials outside the pleadings are considered, the dismissal motion is converted into a motion for summary judgment so that both parties have an opportunity to present material pertinent to the motion. 899 F.3d at 998 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). Judicial notice and incorporation-by-reference are exceptions to this general rule. *Id.* (citing Fed. R. Evid. 201). However, improper application of these exceptions may lead to premature dismissals that may have been valid if discovery were allowed, and this risk is especially significant in SEC fraud matters where plaintiffs are subject to heightened pleading standards. *Id.*[8] The Ninth Circuit further noted that "accuracy is only part of the inquiry under Rule 201(b). A court must also consider—and identify—which fact or facts it is noticing . . . ." *Id.*

Defendants' Exhibits 21 and 23 relate to proceedings in another case in a different court, namely the Under Armour Shareholder Litigation in the Maryland Circuit Court for

---

[8] Plaintiffs referred to this risk as "Defendants' effort to exploit informational asymmetry at the pleading stage." (ECF No. 88-1 at 2.)

Baltimore City. (ECF No. 92 at 3.) Exhibit 24 is an SEC filing on Form 8-K, filed on March 16, 2016. All three exhibits relate to the Class C stock issuance. (*Id.*) Defendants assert that the exhibits are offered only to establish the timeline of events in connection with the Class C stock issuance. (*Id.* at 4.) Defendants argue that such documents are routinely subject to judicial notice, and they assert that they are not asking the Court to take judicial notice of any disputed facts. (*Id.* at 5-7.) Defendants also note that there is no disputed fact with regard to the timeline, but merely a typographical error in the Second Amended Complaint. (*Id.* at 10.)

Certainly, "courts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citations omitted). Also, "[j]udicial notice is appropriate of the content of S.E.C. filings, to the extent that this establishes that the statements therein were made, and the fact that these documents were filed with the agency. . . ." *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 653 n.7 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014). However, "the determination whether a fact properly is considered under this exception depends on the manner in which a court uses this information." *Zak*, 780 F.3d at 607 (citation omitted).

In essence, Plaintiffs request this Court to take judicial notice only of relevant and permissible undisputed facts. Therefore, Plaintiffs' Motion to Strike Exhibits 21, 23, and 24 Attached to Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 88) shall be GRANTED. This Court does not take judicial notice of the truth of the underlying facts in the challenged exhibits and shall not consider the content of the documents to the extent that Defendants seek to use them to provide factual evidence

or to contradict Plaintiffs' allegations. Further, generally, as previously stated, this Court shall identify any facts it has noticed from any other exhibit that was attached to Defendants' dismissal motion. Of course, any such facts noticed shall be construed in the light most favorable to the Plaintiffs.

## II.     Exchange Act Claims

The Exchange Act and its accompanying regulations act to protect the integrity of the market in securities and prohibit fraud in connection with the purchase or sale of a security. *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Securities fraud actions serve an important purpose—but only when those actions are meritorious. *Cozzarelli*, 549 F.3d at 624 (citing *Tellabs*, 551 U.S. at 313, 322). "The PSLRA balances these concerns by requiring courts to sort out the meritorious claims from the abusive ones early in litigation, and *Tellabs* obligates courts do so with care." *Id.*

### A.     Section 10(b) and Rule 10B-5

Section 10(b) of the Act prohibits the use of "any manipulative or deceptive device or contrivance" in connection with the sale of a security in violation of SEC rules. 15 U.S.C. § 78j(b). "Rule 10b–5 encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

A typical § 10(b) action requires a plaintiff to prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 2027 (2018)

(quoting *Stoneridge*, 552 U.S. at 157). The Defendants contend that Plaintiffs' Second Amended Complaint has not cured the prior complaint's pleading inadequacies, and they fail to plead an actionable misrepresentation or omission and also still fail to adequately allege scienter. The PSLRA's heightened pleading standard is applicable to these two elements. *Singer v. Reali*, 883 F.3d 425, 449 (4th Cir. 2018) (quoting *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007)).

### 1. Material Misrepresentations or Omissions

"The 'complaint must include each statement alleged to have been misleading, the reason . . . why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting *Teachers'*, 477 F.3d at 172). In its prior decision, this Court, viewing the factual allegations as true, as it must under the dismissal standard, concluded that although many of Plaintiffs' allegations did not represent actionable misrepresentations, Plaintiffs made a plausible claim under the analysis of the alleged partial disclosures, and there were also some allegations of statements regarding the financial outlook for 2016 that satisfied the pleading requirement. *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d at 685, 689.[9] It is unnecessary to perform another thorough analysis on this element. As before, there are sufficient allegations pled to move forward to the second of the six elements: scienter.

---

[9] Plaintiffs misstate this Court's "findings" by, for example, stating that Plank, "as this Court has already found, made material misrepresentations and omissions." (ECF No. 86 at 27.) In the prior dismissal decision, this Court did not make findings of fact, but held that Plaintiffs made sufficient factual allegations, accepted as true, to satisfy the pleading standard with regard to this element.

## 2. Scienter

To establish scienter, a plaintiff must prove that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. Although pleading either intentional or severely reckless conduct is sufficient to allege scienter, *Yates*, 744 F.3d at 884, a plaintiff must satisfy the exacting pleading requirements set forth in the PSLRA as well as Rule 9(b) of the Federal Rules of Civil Procedure. *Tellabs*, 551 U.S. at 313. Indeed, pleading a "strong inference" of scienter is no small burden. *See id.* at 322-23 ("The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.").

"To survive a motion to dismiss in a § 10(b) complaint, the inference of scienter must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations." *Maguire*, 876 F.3d at 547 (citation omitted). The plaintiff must "plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference." *Tellabs*, 551 U.S. at 328; *see also Yates*, 744 F.3d at 885 ("A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009))).

In sum, a court, while accepting all factual allegations as true,[10] must consider the complaint in its entirety, determine whether the alleged facts, taken collectively, give rise to an inference of scienter, compare the strength of that inference to opposing inferences that could also be drawn from the facts alleged, and determine whether the inference of scienter is at least as strong as any opposing inference.

A reckless act, in the context of a § 10(b) claim, is one that is "so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Yates*, 744 F.3d at 884 (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009)). "Reckless conduct sufficient to establish a strong inference of scienter is described as 'severe.'" *Zak*, 780 F.3d at 606 (quoting *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 344 (4th Cir. 2003)).

In its prior decision, this Court stated:

> Viewed collectively, and taking into account plausible opposing inferences, the factual allegations made by Plaintiffs do not support a strong inference of scienter. Additionally, Plaintiffs allegations are not sufficiently particular as to the Individual Defendants for this Court to parse whether any one of them may be found to have made a material misrepresentation or omission with scienter. Plaintiffs frequently group Defendants together, especially when pleading knowledge or recklessness, which fails to satisfy the PSLRA's heightened pleading standard applicable to the first two elements of the Section 10(b) cause of action.

*In re Under Armour Sec. Litig.*, 342 F. Supp. 3d at 694.

---

[10]     However, unlike the typical analysis in a motion to dismiss, the PSLRA does not require all reasonable inferences to be construed in the light most favorable to plaintiffs, but rather requires plaintiffs to plead sufficient facts to raise a strong inference of scienter. *Teachers'*, 477 F.3d at 172.

Plaintiffs had originally sued Under Armour and three individuals: Plank, and two former Chief Financial Officers. In the Second Amended Complaint, Plaintiffs sue only Under Armour and Plank. Each shall be addressed in turn.

### a. Plank

Defendants contend that Plaintiffs once again fail to provide any corroborating factual allegations to support their allegation that Plank knew his statements were false or misleading at the time he made them. (Mot. Mem. 8, ECF No. 80-2.) Defendants also assert that the allegations of motive based on Plank's stock sales are insufficient to support a strong inference of scienter. (*Id.* at 17.)

In the Plaintiffs' Second Amended Complaint, allegations have been added to demonstrate that the SportScan data cited in the Morgan Stanley Report was both reliable and materially consistent with Under Armour's internal data. (*See, e.g.*, ¶¶ 64-71, ECF No. 78.) Plaintiffs assert that these allegations give rise to an inference that "Plank and Under Armour knew, or recklessly disregarded, that the Company was experiencing undisclosed declining demand for the Company's core apparel products and, as a result, had resorted to pursuing high volume, low-priced sales, which caused declining ASPs, reduced margins and excess inventory." (ECF No. 86 at 2.) Plaintiffs also argue that it is implausible to suggest that Plank was not monitoring the Company's performance using its internal accounting system and regular reports. (*Id.* at 3.) Further, Plaintiffs include additional allegations related to Plank's stock sales during the Class Period in their attempt to support scienter with allegations of motive. (*See, e.g.*, ¶¶ 86-93, ECF No. 78.)

Certainly, now that Plank is the only individual defendant being sued, the Plaintiffs' complaint no longer presents this Court with the prior complaint's group pleading problems. Therefore, this Court will focus on the holistic view of the scienter pleadings, taking into account plausible opposing inferences, but not parsing out each allegation for individual analysis. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011). Allegations, accepted as true for purposes of a Motion to Dismiss, supporting an inference that Plank acted with the required state of mind include:

- Plank had access to industry data as well as Under Armour's detailed internal sales data such that he knew, or should have known, the actual state of Under Armour's sales, market share, inventory levels, pricing, and demand for particular styles. (ECF No. 78 at ¶¶ 65-75.)

- Plank addressed the Company's performance at internal meetings in August or October 2016, discussing the possibility of lowering projections. (*Id.* at ¶ 76.)

- Plank knew by the summer of 2016 that at least one of their largest customers was falling short of projections and made deals with that customer to book sales with the promise that products could be returned. (*Id.* at ¶ 77.)

- Plank knew that Sports Authority was struggling before the March 2016 announcement that it would file for bankruptcy protection. (*Id.* at ¶ 78.)

- Plank was motivated to maintain the public perception of the Company as the fast-growing challenger to the number one sportswear brand and keep share prices high because he was the largest shareholder. (*Id.* at ¶ 84.)

- Plank profited during the Class Period by selling 2,300,000 Under Armour shares for $138.2 million. (*Id.* at ¶ 85.) The pattern of sales before and during the Class Period differed: for example, Plank averaged $23 million per selling month before the Class Period, but he averaged nearly $70 million per selling month during the Class Period. (*Id.*)[11] Plank has not sold any stock since April 2016. (*Id.* at ¶ 91.)

---

[11] Plaintiffs also alleged that the number of shares sold were out of line with Plank's prior trading. (ECF No. 78 at ¶ 90.) Defendants note that the numbers of shares sold is not an accurate comparison because of

- Within just a few days after Plank sold $38.2 million in stock between April 26-29, 2016, on May 3, 2016, the Company announced the departures of two key executives with no reasons provided, which caused the Company's share prices to drop and caused concern among analysts. (*Id.* at ¶¶ 170-74.) The departures were "influenced or precipitated by the Company's myriad problems including the declining apparel sales growth, loss of market share, increased discounting, and elevated inventory levels." (*Id.* at ¶ 173.) On May 31, 2016, the Company announced it was lowering guidance for 2016, despite having raised it just a month earlier. (*Id.* at ¶ 176.)

- Under Armour issued a $600 million bond offering in June 2016, after the Company had reported negative free cash flow in 2015 for the first time since 2007, which was known to Plank. (*Id.* at ¶¶ 98-99.) The bonds were downgraded to junk status on February 1, 2017. (*Id.* at ¶ 99.)

In a nutshell, Plaintiffs' allegations paint a picture that Plank, although he had access to contradictory information, recklessly told investors that Under Armour's core business was incredibly strong, profitable, and gaining market share, while the Company was shifting from a premium brand focus to competing on price, which Plank knew would result in a decline in the Company's market share and stock price. Plaintiffs add allegations that Plank did this for the purpose of keeping the stock price artificially inflated so that he could sell large quantities of his own stock for $138 million in profit before the truth was revealed regarding the Company's sales decline and loss of market share, which caused the stock prices to drop.

Defendants counter that Plank's stock sales were neither unusual nor suspicious but were made according to a pre-announced plan that was part of a long-term strategy to increase liquidity without diluting his control, and he continues to hold 95% of the Company's stock so he has experienced the same decline in value. Defendants argue that the most plausible inference of the alleged facts is that the Company, which had experienced years of robust

---

the effect of three stock splits between July 2012 and April 2016, which increased Plank's holdings from about 11 million shares to almost 70 million shares. (ECF No. 80-2 at 21.)

growth continuing late into the Class Period, hit an unexpected slowdown. Defendants note

facts, and lack of facts, that provide opposing inferences, including:

- Before the Class Period, in a June 15, 2015 letter to shareholders regarding the issuance of Class C Common Stock, Plank stated that the issuance of the Class C shares would allow him the flexibility of selling non-voting shares, which is what he did in April 2016 during the Class Period. (ECF No. 78 at ¶ 87.) Plank only sold stock that would not result in his loss of voting control. (*Id.* at ¶ 86.)

- During the three years prior to the Class Period, Plank sold 4,758,754 shares for $322 million. (*Id.* at ¶ 90.) His total Class Period sales were less than his pre-Class Period sales.

- As noted in this Court's prior decision, Plank sold stock pursuant to a pre-scheduled Rule 10b5-1 trading plan. *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d at 693.

- Plank's total sales of Under Armour shares during the Class Period, which included a 275,000 donation to his charitable foundation, represented 4.9% of his total holdings. (ECF No. 80-2 at 20, n.12.) Plank retained over 95% of his shares. (*Id.* at 22.)

- Plank takes a nominal annual salary of $26,000 per year. (ECF No. 80-2 at 22, n. 14; ECF No. 86 at 25, n.12.)

- There is no plausible reason why Plank would risk his reputation and career to perpetrate a fraud that would necessarily come to light and from which he derived no benefit. (ECF No. 93 at 2.)

- Allegations include no confidential witnesses, no admissions, no internal documents, and no witnessed discussions to suggest that at the time Plank made the statements claimed to be misleading, he was aware that he was withholding vital information or had been warned that he was doing so. (ECF No. 93 at 3.) There are no allegations regarding the Company's accounting system providing Plank with data inconsistent with his statements. (*Id.* at 6 n. 2.)

- Plank made statements that modified his enthusiasm and optimism, such as: "I'm not going to say I'm comfortable with the promotion out there in the market today, but I don't know if that's different than what we've seen in the last several years, either." (ECF No. 78 at ¶ 197.)

- The statements alleged to have been made at internal company meetings in 2016 were consistent with the Company's October 2016 disclosures, in which the Company lowered its long-term projections. (ECF No. 80-2 at 15.)

- Leading up to the Class Period, the Company had experienced 21 consecutive quarters with greater than 20% net revenue growth. (ECF No. 78 at ¶ 36.) That growth continued into the Class Period. (*See id.* ("For 26 consecutive quarters (over six years) spanning from 2Q10 to 3Q16, Under Armour reported an unwavering revenue growth rate of 20% or more (on a year-over-year basis)".)

Defendants generally assert that there are simply insufficient facts pled to create a strong or compelling inference that Plank had the intent to deceive, manipulate, or defraud investors. This Court accepts that Plaintiffs' allegations may be sufficient to state a facially plausible claim under a typical dismissal standard, but plausibility in a vacuum is not enough in the PSLRA context. To survive a dismissal motion, a securities fraud complaint must do more than state a facially "plausible" claim under *Iqbal* and *Twombly* because the sufficiency of the allegations must be scrutinized under the heightened pleading requirements set forth in the Private Securities Litigation Reform Act, which was intended to stiffen the requirements for securities lawsuits and "make pleading scienter more difficult for plaintiffs." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 620 (4th Cir. 1999). Therefore, if a court finds the inference that the defendants "acted innocently, or even negligently, more compelling than the inference that they acted with the requisite scienter," the complaint should be dismissed. *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 313 (4th Cir. 2009).

Plaintiffs have attempted to boost their allegations with opinions from experts regarding the contemporaneous data that must have been available to Plank and the suspicious timing of Plank's stock sales. As stated above, this Court does not credit these external opinions on whether the allegations present a cogent and compelling inference of scienter.

After consideration of all the alleged facts and inferences, this Court concludes that the most reasonable likely inference to be drawn is that Plank interpreted the data that was available to him through the lens of the Company's consistent success to date, attributed any non-conforming data to typical retail market challenges, and assumed the Company would continue to rise above such challenges as it had always done in the past. It is possible that Plank was negligent by not paying more attention to non-conforming and negative sales data earlier than he did, but there is no strong or compelling inference of deliberately intentional misconduct or such severe recklessness that it rises to the level of fraud. Marketing and management mistakes that result in a stock price decline do not typically equate to securities fraud. Further, the inference that Plank's stock sales during the Class Period were carefully timed to capitalize on deliberately inflated stock prices is not as likely as the inference that Plank sold shares during the Class Period as he'd previously announced was his plan.

Accordingly, viewed in its entirety, the Second Amended Complaint fails to present a cogent or compelling theory that Plank acted with the requisite scienter. Count I against Defendant Plank shall be dismissed. Further amendment of Plaintiffs' complaint asserting securities fraud claims, which have now been amended three times, would be futile in light of the fundamental failure to plead scienter, warranting dismissal with prejudice, consistent with Defendants' request in their motion.

### b. The Company

Defendants also assert that Plaintiffs' corporate scienter theory is deficient. (Mot. Mem. 23-28, ECF No. 80-2.) "[I]f the defendant is a corporation, the plaintiff must allege facts that support a strong inference of scienter with respect to at least one authorized agent

of the corporation, since corporate liability derives from the actions of its agents." *Teachers'*, 477 F.3d at 184; *see also Matrix*, 576 F.3d at 189. Plaintiffs assert that even if Plank did not act with scienter, the Second Amended Complaint still adequately alleges scienter as to Under Armour on the basis of non-Defendant employees' scienter. (ECF No. 86 at 32.) Plaintiffs allege that numerous senior executives, including Under Armour's Chief Product Officer Kip Fulks ("Fulks") and Senior Vice President Brian Cummings ("Cummings") had knowledge of, or recklessly disregarded, adverse facts concealed by Defendants' Class Period misrepresentations. (ECF No. 78 at ¶¶ 109-113.)

Plaintiffs allege that the Company's senior management, including Fulks and Cummings, had knowledge of declining demand, excess inventory, and margin compression. (*Id.* at ¶¶ 109-110, 111-13.) Plaintiffs also allege that Cummings orchestrated a deal with a customer to order products it didn't want with the promise that they could be returned, and that 80% of more of the products were returned. (*Id.* at ¶ 111.) However, there are no allegations that Fulks or Cummings provided information that was used in a misleading public statement, and there are no allegations that Fulks or Cummings were involved with the issuance of misstatements to the public. Therefore, there is a failure to allege that the corporate agents took any actions that would subject the corporation to liability. Plaintiffs assert that "scienter by management-level employees is generally sufficient to attribute scienter to corporate defendants." (ECF No. 86 at 33 (quoting *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009)).) However, although Plaintiffs make a conclusory statement that the executives had the requisite scienter, (ECF No. 78 at ¶ 109), Plaintiffs make no factual allegations that the corporate agents acted with scienter.

Accordingly, the Second Amended Complaint fails to allege scienter that can be imputed to Under Armour. Count I against Defendant Under Armour shall be dismissed with prejudice.

**B.      Section 20(a)**

Section 20(a) provides for derivative liability for those who control others found to be primarily liable under the Act. 15 U.S.C. § 78t(a). A claim of control person liability must allege a predicate violation of Section 10(b). *Mun. Mortg.*, 876 F. Supp. 2d at 647. As stated above, this Court has concluded that Plaintiffs failed to plead a viable underlying 10(b) or Rule 10b–5 violation by Plank or the Company. Since Plaintiffs must successfully allege a predicate violation of the Act in order to proceed under § 20(a), failure of the scienter allegations of the § 10(b) claim is fatal to Plaintiffs' § 20(a) claim. Therefore, Count II shall be dismissed with prejudice.

**C.      Section 20A**

In the Second Amended Complaint, Plaintiffs have added a Count III – For Violation of Section 20A of the Exchange Act Against Defendant Plank. (ECF No. 78 at 104.) Section 20A provides for a private right of action to buyers and sellers of securities who trade "contemporaneously" with an insider in possession of material nonpublic information. 15 U.S.C. § 78t–1(a). "Like a claim for control person liability asserted under § 20(a), a § 20A claim must contain a well-pled predicate violation of the Exchange Act." *In re E. Spire Comms., Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 750 (D. Md. 2001).

This Court has concluded that Plaintiffs did not sufficiently plead scienter to support a claim against Plank for securities fraud. With no primary violation of the Exchange Act to support a § 20A claim, it must also fail. Therefore, Count III shall be dismissed with prejudice.

## CONCLUSION

For the reasons stated above,

1.   Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 80) is GRANTED.

2.   Defendants' Motion to Strike the Declarations of Mark A. Cohen and Professor M. Todd Henderson (ECF No. 79) is GRANTED.

3.   Plaintiffs' Motion to Strike Exhibits 21, 23, and 24 Attached to Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Complaint (ECF No. 88) is GRANTED.

4.   Plaintiffs' Consolidated Second Amended Complaint (ECF No. 78) is DISMISSED WITH PREJUDICE.

5.   A separate order follows.


Dated:      August 19, 2019.

                                                                    /s/
                                                        Richard D. Bennett
                                                        United States District Judge