# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION | * * * | Civil Action No.: RDB-17-0388 |

## MEMORANDUM OPINION

The central allegation in this putative class action lawsuit is that Defendants Under Armour, Inc. ("Under Armour" or "the Company") and its representatives, including its former CEO Kevin Plank ("Plank"), misrepresented the level of demand for Under Armour products. In two previous opinions, this Court dismissed Plaintiffs' claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act"), 14 U.S.C. §§ 78j(b), 78t(a), 78t-1, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k, 77o. (ECF Nos. 74, 98.) On September 9, 2019, this Court entered Judgment in favor of all Defendants. (ECF No. 101.) On September 17, 2019, Plaintiffs, led by the Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Lead Plaintiff"), filed a timely Notice of Appeal to the United States Court of Appeals for the Fourth Circuit. (ECF No. 102.)

On November 3 and 14, 2019, *The Wall Street Journal* published two articles reporting that Under Armour has been the subject of investigations by the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") since at least July 2017 and that Under Armour shifted sales from quarter to quarter to appear healthier. Based on this new

evidence, Plaintiffs have filed a Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF No. 105) and Motion for Relief from the Court's September 9, 2019 Judgment (ECF No. 106). Moving separately, Lead Plaintiff has filed a Motion to Consolidate and Vacate Notice and Lead Plaintiff Deadline (ECF No. 107) and a Motion for Consolidation of Related Actions, Appointment of a Lead Plaintiff, and Approval of Selection of Counsel (ECF No. 131).

On Tuesday, January 14, 2020, this Court conducted a Motions Hearing concerning the Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF No. 105) and Motion for Relief from the Court's September 9, 2019 Judgment (ECF No. 106). For the reasons set forth on the record, and more fully stated herein, the Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF No. 105) is GRANTED. Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, this Court concludes that it would GRANT the Motion for Relief from the Court's September 9, 2019 Judgment (ECF No. 106) if the United States Court of Appeals for the Fourth Circuit remands for that purpose. Upon remand, this Court would consolidate this matter with *Patel v. Under Armour, Inc.* (RDB-19-3209) and *Waronker v. Under Armour, Inc.* (RDB-19-3581) and appoint the Lead Plaintiff of this action as Lead Plaintiff over the consolidated cases. Finally, this Court would permit Plaintiffs to file a Third Amended Complaint bringing *only* Exchange Act Claims against *only* Defendants Under Armour and Kevin Plank.[1]

---

[1] During the January 14, 2020 Motions Hearing, Plaintiffs agreed to dismiss the Securities Act Claims originally asserted in Counts I and II of the Consolidated Amended Complaint against the nine Director Defendants and the eleven Underwriter Defendants. *See* pages 4-5, 16, *infra.*

## BACKGROUND

In brief,[2] Under Armour is a Maryland-based sports apparel company that sells branded athletic apparel, footwear and accessories worldwide. (ECF No. 78 at ¶ 4.) Since its formation in 1996, the Company has grown to become a leading premium sportswear brand, achieving the position of number two sportswear brand by revenue in the United States by 2014. (*Id.* at ¶¶ 5-6.) By capitalizing on its premium brand image and reputation for state-of-the-art fabrics, Under Armour reported 26 consecutive quarters of 20% or more compounded annual growth between 2010 and 2016. (*Id.* at ¶ 6.) Kevin Plank is the Company's founder, former Chief Executive Officer, and largest shareholder. (*Id.* at ¶ 24.) On October 22, 2019, the Company announced that Plank would become the Executive Chairman and Brand Chief of the Company. (ECF No. 106-3.)

Plaintiffs allege generally that beginning in September 2015, Defendants' public statements concealed that they knew consumer demand for Under Armour's products was declining, so the Company abandoned its "brand strength over price" sales philosophy and resorted to discounting, which led to Under Armour's stock prices being artificially inflated by lower-margin sales and international expansion. (ECF No. 78 at ¶¶ 9-12.) Additionally, Plaintiffs allege that Under Armour inflated its sales numbers by pressuring Dick's Sporting Goods to order more inventory than it required, with the promise that it could return the items later. (*Id.* at ¶¶ 77, 111.) Similarly, Under Armour is alleged to have continued making sales to The Sports Authority even after learning that the retailer was headed towards

---

[2] This Court provided a detailed background in its September 19, 2018 decision and incorporates it herein. *See In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658 (D. Md. 2018).

bankruptcy. (*Id.* at ¶ 78.) In January 2016, Morgan Stanley & Co. LLC ("Morgan Stanley")[3] published a report relying on industry sales data that revealed Under Armour's average-sales-price and market-share decline, which started a corresponding decline in the Company's stock prices. (*Id.* at ¶ 13.) Plaintiffs also allege that Plank "personally cashed in on" the stock's artificial inflation by selling a substantial amount of his stock in the Company during the Class Period. (*Id.* at ¶ 12.)

In their Consolidated First Amended Complaint (ECF No. 30), Plaintiffs Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("Lead Plaintiff") and Bucks County Employees Retirement Fund brought a putative class action against Under Armour, Plank, Lawrence P. (Chip) Molloy ("Molloy"), Brad Dickerson ("Dickerson"), named directors[4] ("Director Defendants"), and named underwriters[5] ("Underwriter Defendants") alleging violations of federal securities laws. Under Counts I and II, Bucks County Employees Retirement Fund brought Securities Act[6] claims against Under Armour, Plank, Molloy, the Director Defendants, and the Underwriter Defendants. Under

---

[3] Morgan Stanley is an American multinational investment bank and financial services company that has a reputation as a leader in the field of investment research. Plaintiffs reference multiple research reports, referred to as the Morgan Stanley Reports, that were published between January 2016 and February 2017 and included commentary about Under Armour's stock.

[4] Byron K. Adams, Jr.; George W. Bodenheimer; Douglas E. Coltharp; Anthony W. Deering; Karen W. Katz; A.B. Krongard; William R. McDermott; Eric T. Olson; and Harvey L. Sanders. (ECF No. 30 at ¶¶ 28-36.)

[5] J.P. Morgan Securities LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Wells Fargo Securities, LLC; HSBC Securities (USA) Inc.; PNC Capital Markets, LLC; BB&T Capital Markets, a division of BB&T Securities, LLC; SunTrust Robinson Humphrey, Inc.; Citigroup Global Markets Inc.; Goldman Sachs & Co. LLC; Regions Securities LLC; and SMBC Nikko Securities America, Inc. (ECF No. 30 at ¶¶ 39-49.)

[6] Securities Act of 1933 ("Securities Act") §§ 11, 15, 15 U.S.C. §§ 77k, 77o, and the rules promulgated thereunder.

Counts III and IV, Plaintiffs brought Exchange Act[7] claims against Under Armour, Plank, Molloy, and Dickerson.

Plaintiffs' Securities Act and Exchange Act claims have several key legal distinctions. Section 11 of the Securities Act provides a right of action based only on misstatements or omissions made in a registration statement issued in connection with a public offering of securities. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 135 S. Ct. 1318 (2015). Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, prohibit a broader range of misconduct, including making material misstatements or omissions which "touch" or "coincide" with a purchase or sale of a security. *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 392, 134 S. Ct. 1058 (2014) (citations omitted). Most importantly for present purposes, Plaintiffs' Exchange Act claims require them to adequately allege "scienter"—that is, an intent "to deceive, manipulate, or defraud." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637, 130 S. Ct. 1764 (2010) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12, 96 S. Ct. 1375 (1976)).

On September 19, 2018, this Court granted Defendants' dismissal motions, dismissing the Securities Act claims (Counts I and II) *with prejudice*. Specifically, this Court held that Plaintiffs had failed to bring their Securities Act claims within the applicable statute of limitations period and, alternatively, that Plaintiffs had failed to adequately plead any material misstatement or omission appearing in Under Armour's registration statement. *In re Under Armour Sec. Litig. (Under Armour I)*, 342 F. Supp. 3d 658, 670-78 (D. Md. 2018). Plaintiffs'

---

[7] Securities Exchange Act of 1934 ("Exchange Act") §§ 10(b), 20(a), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

Exchange Act claims (Counts III and IV), however, were dismissed *without prejudice*. *Id.* at 694. As to those claims, this Court found that Plaintiffs had adequately alleged that Under Armour made false or misleading statements in 2016, but had failed to establish a "cogent and compelling" inference of scienter. *Id.* at 682-94.

On November 16, 2018, Lead Plaintiff and Monroe County Employees' Retirement System, on behalf of all persons or entities that purchased or acquired common stock of Under Armour between September 16, 2015 and January 30, 2017, inclusive ("Class Period") and who were damaged thereby, filed a Consolidated Second Amended Complaint (ECF No. 78). The Second Amended Complaint asserted only Exchange Act claims against only Under Armour and Plank. On August 19, 2019, this Court dismissed all three Counts of the Second Amended Complaint, once again finding that Plaintiffs had failed to allege scienter. *See In re Under Armour Sec. Litig. (Under Armour II)*, 409 F. Supp. 3d 446 (D. Md. 2019). As to Plank's scienter, this Court concluded that "the most reasonable likely inference to be drawn is that Plank interpreted the data that was available to him through the lens of the Company's consistent success to date, attributed any non-conforming data to typical retail market challenges, and assumed the Company would continue to rise above such challenges as it had always done in the past." *Id.* at 462.

On September 9, 2019, this Court entered Judgment in favor of all Defendants. (ECF No. 101.) Subsequently, on September 17, 2019, Plaintiffs noticed an appeal of both this Court's September 19, 2018 ruling dismissing the Securities Act Claims with prejudice and its August 19, 2019 ruling, ultimately dismissing the Exchange Act Claims with prejudice. (ECF No. 102.) In November 2019, *The Wall Street Journal* reported that Under Armour's accounting

practices had been the subject of investigations by the SEC and DOJ since at least July 2017. On November 18, 2019, Plaintiffs filed a Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF No. 105) and Motion for Relief from the Court's September 9, 2019 Judgment (ECF No. 106). Moving separately, Lead Plaintiff has filed a Motion to Consolidate and Vacate Notice and Lead Plaintiff Deadline (ECF No. 107) and a Motion for Consolidation of Related Actions, Appointment of a Lead Plaintiff, and Approval of Selection of Counsel (ECF No. 131).

## STANDARD OF REVIEW

### I. Relief from Judgment Pursuant to Fed. R. Civ. P. 60(b).

Under Rule 60(b), a party may be granted relief from judgment on motion for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; (6) any other reason that justifies relief. Fed. R. Civ. Proc. 60(b).

In addition to making a showing under one of these enumerated grounds, a party seeking relief from judgment under Rule 60(b) must first show "timeliness, a meritorious position, lack of prejudice to the opposition, and exceptional circumstances." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 44 (4th Cir. 1990). Ultimately, it is within this Court's discretion to grant or deny a motion filed pursuant to Rule 60(b). *See National Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993).

## II. Indicative Ruling Pursuant to Fed. R. Civ. P. 62.1.

As recently explained by Judge Hazel of this Court in *Kravitz v. United States Dep't of Commerce*, 382 F. Supp. 3d 393, 397 (D. Md. 2019), this Court retains limited jurisdiction to consider a motion for relief under Rule 60(b) even though an appeal is pending. *See Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 891 (4th Cir. 1999) ("[W]hen a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion, and should do so promptly."). Pursuant to Rule 62.1, the Court may (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue. Fed. R. Civ. P. 62.1.

## ANALYSIS

As explained during the Motions Hearing of January 14, 2020, this Court is inclined to grant Plaintiffs' Motion for relief from Judgment under Rule 60(b) if the case is remanded for that purpose. New evidence that Under Armour has been under investigation by the SEC and the DOJ related to accounting practices which were allegedly employed during the Class Period provides a sufficient basis for vacating this Court's September 9, 2019 Judgment.[8] Additionally, Plaintiffs have satisfied the requirements of "timeliness,[9] a meritorious position, lack of prejudice to the opposition, and exceptional circumstances." *Aliff*, 914 F.2d at 44.

---

[8] This Court draws no inference against the Defendants Under Armour and Plank based on the mere fact that Under Armour has been the subject of an investigation. However, the existence of such an investigation is relevant to allegations that Plank and Under Armour executives acted with scienter.

[9] Defendants do not argue that Plaintiffs' motion is untimely. The Motion is timely because it was filed within days of the relevant reporting by *The Wall Street Journal*.

## I. Relief from Judgment Based on Newly Discovered Evidence.

Under Rule 60(b)(2), Plaintiffs may seek relief from judgment based on newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b). Fed. R. Civ. P. 60(b)(2). A party seeking relief from a judgment under Rule 60(b)(2) must demonstrate the following:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that [it] is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989).

Plaintiffs submit several forms of new evidence to support their motion for relief from Judgment under Rule 60(b). A summary of the evidence is as follows:

- An Under Armour press release dated October 22, 2019 which announces that Kevin Plank would be transitioning from the position of CEO to Executive Chairman and Brand Chief. (ECF No. 106-3.)

- An article by *The Wall Street Journal* dated November 3, 2019 titled "Under Armour is Subject of Federal Accounting Probe" which reports that "Federal law-enforcement officials are investigating Under Armour Inc.'s accounting practices in a probe examining whether the sportswear maker shifted sales from quarter to quarter to appear healthier, according to people familiar with the matter." Citing an undisclosed source, the Article specifically indicates that the "Justice Department prosecutors are conducting a criminal inquiry into the matter" in coordination with the SEC. (ECF No. 106-4.)

- A November 4, 2019 Form 8-K submitted by Under Armour to the SEC, in which Under Armour states that "[t]he Company confirmed to *The Wall Street Journal* that it has been responding to requests for documents and information from the SEC and DOJ regarding certain of the Company's accounting practices and related disclosures, beginning with submissions to the SEC in July 2017. The Company continues to believe its accounting practices and related disclosures were appropriate." (ECF No. 106-5.)

- The Edited Transcript of a Q3 2019 Under Armour, Inc. Earnings Call which occurred on November 4, 2019, in which Under Armour's Principal Accounting Officer, David E. Bergman, stated that "we began responding back in July of 2017 to [the SEC and Department of Justice's] requests for documents and information. We firmly believe that our accounting practices and disclosures were appropriate." (ECF No. 106-6.)

- A November 14, 2019 article by *The Wall Street Journal* titled "Inside Under Armour's Sales Scramble: 'Pulling Forward Every Quarter'," which reports that Under Armour "leaned on retailers to take products early and redirected goods intended for the company's factory stores to off-price chains to book sales in the final days of a quarter, according to former executives in sales, logistics, merchandising and finance." The article further states that "[i]nvestigators are examining emails that show Under Armour's founder and chief executive, Kevin Plank, knew about efforts to move revenue between quarters, according to a person familiar with the matter." (ECF No. 106-7.)

As a preliminary matter, the October 22, 2019 press release from Under Armour announcing Kevin Plank's new position at the Company is not "new evidence" meriting relief from judgment. Evidence presented under Rule 60(b)(2) must actually have existed before Plaintiffs' case was dismissed. *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2011). Furthermore, changes in job position of this kind have been described as "benign." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014). Accordingly, Plank's job change does not factor into this Court's analysis.

Defendants do not contend that any of the remaining evidence fails to qualify as "newly discovered" or accuse Plaintiffs of failing to exercise due diligence. Instead, Defendants argue that the remaining evidence is either cumulative when compared to the allegations of the Second Amended Complaint or otherwise does not require the judgment to be vacated. These arguments are without merit.

10

### A. The evidence is not merely cumulative.

Defendants argue that "some" of the newly discovered evidence is merely cumulative. (ECF No. 119 at 15.) For example, Defendants argue that *The Wall Street Journal*'s reporting about Under Armour's efforts to inflate revenue figures by shipping goods ahead of schedule or making sales to The Sports Authority despite its distressed financial status is "of the same character" as the allegations in the Second Amended Complaint concerning Under Armour's sales to Dick's and The Sports Authority. (ECF No. 78 at ¶¶ 77, 78, 111.)

On the whole, the evidence is not "merely cumulative" with the allegations presented in the Second Amended Complaint. The *Wall Street Journal* reporting and the Company's own disclosures reveal that federal authorities have been investigating Under Armour's accounting practices for over two years and that the Company has been responding to requests for documents and information since July 2017. This information is nowhere to be found in the Second Amended Complaint because the investigation had not been revealed to the public. While the reporting concerning Under Armour's sales practices certainly echoes and supports some of the allegations in the Second Amended Complaint, the reporting also presents new details about these sales practices. For example, the reporting indicates that Under Armour engaged in allegedly questionable sales practices with "retailers"—not just Dick's—and that Dick's "stopped taking products early" as a result of a July 2016 deal between Under Armour and Kohl's Corp. (ECF No. 106-7.) The new information provided by the Plaintiffs places their original allegations in a new light and is not merely cumulative.

11

## B. The evidence requires the judgment to be vacated.

Defendants further argue that Plaintiffs have failed to meet their burden of showing that the newly discovered evidence "clearly would have produced a different result if present before the original judgment." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 258 (5th Cir. 2003). In the Second Amended Complaint, Plaintiffs reiterated[10] claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Section 10(b) of the Act prohibits the use of "any manipulative or deceptive device or contrivance" in connection with the sale of a security in violation of SEC rules. 15 U.S.C. § 78j(b). "Rule 10b–5 encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

A typical § 10(b) action requires a plaintiff to prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Yates, Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008)).

To establish scienter, a plaintiff must prove that the defendant acted with "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S. Ct. 2499 (2007). "To survive a motion to dismiss in a § 10(b) complaint, the inference of scienter must be more than merely reasonable or permissible—it

---

[10] This Court's September 19, 2018 opinion dismissed the Securities Act claims asserted in the Consolidated Amended Complaint *with prejudice*, but the Exchange Act claims asserted therein *without prejudice*. This posture permitted the Plaintiffs to reassert their Exchange Act claims in an amended pleading.

must be cogent and compelling, thus strong in light of other explanations." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547 (4th Cir. 2017), *cert denied*, 138 S. Ct. 2027 (2018). The plaintiff must "plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference." *Tellabs*, 551 U.S. at 328; *see also Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 885 (4th Cir. 2014) ("A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009))).

In its prior rulings, this Court held that Plaintiffs adequately pled actionable misrepresentations or omissions, but failed to adequately allege scienter. Accordingly, Plaintiffs must demonstrate that the newly discovered evidence would cause this Court to reach a different ruling on the issue of scienter. As Plaintiffs seek relief from the dismissal of their Second Amended Complaint, the evidence must be considered as if it were presented as allegations in that pleading. This Court must accept those allegations as true and, considering the totality of the allegations in the Second Amended Complaint, determine whether the Plaintiffs have pled a compelling case for scienter. *See Kurzweil v. Philip Morris Cos., Inc.*, No. 94 Civ. 2373 (MBM), 1997 WL 167043, at *5 (S.D.N.Y. Apr. 9, 1997) (accepting as true new evidence presented in Rule 60(b)(2) Motion which sought relief from order granting motion to dismiss Section 10(b) claims for failure to state a claim).

As indicated on the record at the Hearing of January 14, 2020, the new evidence tips the scale in favor of permitting Plaintiffs' claims to proceed. Under Armour is alleged to have engaged in questionable accounting practices to inflate its revenue within the Class Period.

These practices include pulling in sales from future quarters and shipping goods to retailers even when Under Armour knew the goods would likely never be sold to consumers and would be returned. Allegedly, Plank's emails reveal that he was personally aware of these practices. Under Armour's strategy has become the subject of a federal investigation by the SEC and the DOJ. These allegations support the conclusion that Under Armour and Plank knew that demand for their products was waning, resorted to risky sales tactics to keep the numbers intact, and intentionally misrepresented the level of demand for their products. The totality of these allegations permit a strong inference of scienter on the part of Under Armour executives and Plank specifically.

Defendants protest that the "investigations are not alleged to have begun until July 2017" and that their existence provides no information about Plank's state of mind during the Class Period, which does not extend beyond January 30, 2017. (ECF No. 119 at 18.) This argument reflects a narrow view of the Plaintiffs' allegations. The Plaintiffs also allege that Under Armour engaged in questionable sales tactics and accounting practices during the Class Period, that Plank's emails reflect that he had personal knowledge of these strategies, and that the Company's accounting practices during the Class Period have become the subject of a lengthy federal inquiry. Under Armour's subsequent disclosure that its accounting practices have been under federal investigation is merely one factor this Court must consider when examining the totality of the Plaintiffs' allegations. *See Tellabs*, 551 U.S. at 322-23, 127 S. Ct. 2499 ("The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.")

This Court is keenly aware that a federal investigation is not tantamount to a violation of the law. *See In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 836 (S.D. Tex. 2016) ("An investigation is not a violation."). This Court does not suggest that Under Armour failed to uphold a duty to disclose the existence of this investigation. Finally, this Court takes no position as to the legality of Under Armour's sales strategies or revenue recording practices. These issues are not dispositive at this stage. The only issue this Court must resolve is whether Defendants' alleged awareness of Under Armour's sales activities and accounting practices, which have become the subject of a federal inquiry, generates a "cogent and compelling" inference of scienter. This Court concludes that it does.

## II. Lack of Prejudice.

Plaintiffs must also show that their opponents will not be prejudiced by obtaining relief from this Court's Judgment. *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 44 (4th Cir. 1990). The prejudice must be something beyond that which befalls any litigant when a favorable Judgment is set aside, and cannot amount to the mere protraction of legal proceedings. *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984).

Under Armour and Plank assert that the Director Defendants[11] and the Underwriter Defendants[12] will suffer prejudice if the Plaintiffs' motion is granted. As previously indicated, this Court dismissed the Securities Act claims asserted against the Director Defendants and

---

[11] Byron K. Adams, Jr.; George W. Bodenheimer; Douglas E. Coltharp; Anthony W. Deering; Karen W. Katz; A.B. Krongard; William R. McDermott; Eric T. Olson; and Harvey L. Sanders. (ECF No. 30 at ¶¶ 28-36.)

[12] J.P. Morgan Securities LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Wells Fargo Securities, LLC; HSBC Securities (USA) Inc.; PNC Capital Markets, LLC; BB&T Capital Markets, a division of BB&T Securities, LLC; SunTrust Robinson Humphrey, Inc.; Citigroup Global Markets Inc.; Goldman Sachs & Co. LLC; Regions Securities LLC; and SMBC Nikko Securities America, Inc. (ECF No. 30 at ¶¶ 39-49.)

the Underwriter Defendants in September 2018. They were not named as Defendants in the Second Amended Complaint. Should the Court reopen this case, Under Armour and Plank argue, these Defendants will have to wait an indefinite period before the case is finally resolved in this Court and their favorable ruling reviewed by the Fourth Circuit.

The Director Defendants and the Underwriter Defendants will suffer no obvious prejudice from this action. The delay which the Defendants decry amounts to nothing more than "protracted proceedings," which cannot support a prejudice argument in this context. Moreover, during the Motions Hearing, counsel for the Plaintiffs indicated that these claims would no longer be pursued. Plaintiffs' counsel expressly indicated that Plaintiffs will not reassert claims against the Director and Underwriter Defendants in a potential Third Amended Complaint, nor will they pursue any appeal of this Court's dismissal of the Securities Act claims asserted against these defendants. (1/14/2020 Hr'g Tr. 86:2-87:21, ECF No. 136.) In sum, the Director Defendants and Underwriter Defendants have already achieved finality and can suffer no prejudice from the maintenance of this action against the Defendants Under Armour and Plank. Accordingly, this Court finds that the Defendants would not be prejudiced by granting the relief sought by the Plaintiffs.

### III. Exceptional Circumstances.

Finally, Plaintiffs must present "exceptional circumstances" to obtain relief under Rule 60(b). *Aliff*, 914 F.2d at 44. Relying on *Aikens v. Ingram*, 612 F.3d 285 (4th Cir. 2010), and the Fourth Circuit's subsequent *en banc* opinion in that matter, 652 F.3d 496 (4th Cir. 2011), Defendants argue that Plaintiffs cannot demonstrate "exceptional circumstances" because

they have another avenue available: filing a new lawsuit. *Aikens*, however, is readily distinguishable from this case.

*Aikens* affirmed the district court's denial of a Rule 60(b) motion because of the plaintiff's mismanagement. Aikens, a former colonel in the North Carolina Army National Guard, filed suit in federal court against his former National Guard colleagues. *Aikens*, 612 F.3d at 286. The district court dismissed the case for lack of jurisdiction without prejudice, reasoning that Aikens had failed to exhaust his administrative remedies. *Id.* at 288. After Aikens unsuccessfully attempted to obtain relief through administrative proceedings, and six months after the district court entered judgment against him, Aikens filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). *Id.* at 288. The district court denied the motion, reasoning that Aikens had failed to demonstrate "extraordinary circumstances" required by Rule 60(b)(6) because he could have filed a new action instead of sitting on his rights and, many months later, attempting to re-open an old case. *Id.* at 288. In response to Aiken's protest that the statute of limitations had expired, the district court reasoned that a plaintiff may not use Rule 60(b) to evade statute of limitations defenses. *Id.* at 291. The Fourth Circuit affirmed on appeal, finding that Aiken's predicament was the product of his own mismanagement of the action. *Id.* ("In short, Aikens' posited predicament was as much the result of his management of the action as the result of the district court's allegedly erroneous judgment of dismissal.") The Fourth Circuit reached substantially the same conclusion *en banc*. *Aikens*, 652 F.3d at 502-03.

In this case, there is no suggestion that Plaintiffs have mismanaged their case. Unlike in *Aikens*, Plaintiffs have taken advantage of ordinary avenues for relief by filing an appeal.

Plaintiffs are not seeking to circumvent a statute of limitations defense by re-opening an old case, as appeared to be the case in *Aikens*. Plaintiffs have presented new evidence which places their allegations in a new light and are highly relevant to their Exchange Act claims. The nature of this evidence, which has revealed a previously undisclosed federal investigation into the Defendants' accounting practices, presents exceptional circumstances warranting relief under Rule 60(b).

## CONCLUSION

For the reasons set forth on the record at the hearing of January 14, 2020, and more fully set forth in this Memorandum Opinion, the Motion for Indicative Ruling Under Federal Rule of Civil Procedure 62.1 (ECF No. 105) is GRANTED. Pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, this Court concludes that it would GRANT the Motion for Relief from the Court's September 9, 2019 Judgment (ECF No. 106) if the United States Court of Appeals for the Fourth Circuit remands for that purpose.

A separate order follows.

Dated: January 22, 2020

/s/ Richard D. Bennett

Richard D. Bennett
United States District Judge