IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION </br></br> This Document Relates To: </br></br>    ALL ACTIONS. | ) Civil No. RDB-17-388 </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF UNDER ARMOUR'S MOTION TO SEAL

Pursuant to Local Rule 105.11 and the Court's October 27, 2023 Order (ECF No. 327), Defendant Under Armour, Inc. ("UA") respectfully submits this memorandum of law in support of its motion to seal certain confidential material filed with the Court (ECF No. 364) (the "Motion to Seal").[1]

### INTRODUCTION

Plaintiffs allege that, between the third quarter of 2015 and the first quarter of 2017, Defendants misled investors about UA's sales performance and consumer demand for UA products. To pursue those allegations, Plaintiffs sought sweeping discovery from Defendants and non-parties, including from numerous UA customers. Recognizing that discovery included competitively sensitive information regarding UA's sales performance and strategies, the parties

---

[1] Unless otherwise noted, emphasis is added and internal citations and quotation marks are omitted. References to "ECF No. __" are to documents on the electronic docket of this action. References to "DX __" are to the exhibits to the Declarations of Samuel P. Groner, dated October 2, 2023 (ECF No. 301) and December 18, 2023 (ECF No. 347). References to "PX __" are to exhibits to the Declaration of Robert R. Henssler Jr., dated November 6, 2023 (ECF No. 337). References to the "Herber Decl." are to the Declaration of Kristin P. Herber, dated December 22, 2023, and submitted herewith.

negotiated and agreed upon the terms of a stipulated protective order, which was approved by the Court and required the parties to maintain these materials under the strictest confidence (ECF No. 184; the "Protective Order").[2]

On October 2, 2023, Defendants filed a motion for summary judgment and motions to exclude certain opinions and testimony of Plaintiffs' experts. That same day, Plaintiffs filed motions to exclude certain opinions and testimony of three of Defendants' experts. These motion papers were accompanied by, and reflected information sourced from, documents produced during discovery that were marked "Confidential" or "Highly Confidential" pursuant to the Protective Order. The parties' respective opposition and reply papers in connection with these motions likewise were accompanied by, and contained information sourced from, confidential materials. Pursuant to an agreement between the parties, the Court ordered that, pending the resolution of this Motion to Seal, "all parties are permitted to file documents and information designated as 'Confidential' or 'Highly Confidential' under the Stipulated Protective Order in this action [] provisionally under seal." ECF No. 327 ¶ 4.

In total, the parties submitted 301 exhibits with their motion papers, 241 of which contained information designated as "Confidential" or "Highly Confidential" under the Protective Order. The parties also referred to information designated as "Confidential" or "Highly Confidential" under the Protective Order in their respective memoranda of law and in an appendix to one of the memoranda of law. Consistent with Local Rule 105.11 and the Court's

---

[2]   The Protective Order permitted the parties to designate as "Confidential" or "Highly Confidential" information containing, among other things, "sensitive personal information, trade secrets or other confidential research, development, or commercial information" and "highly sensitive non-public commercial, proprietary, financial, business, employment, or personal information." ECF No. 184 at ¶¶ 1(a), 2. The Protective Order also provided protection to non-parties, who were authorized to designate documents that they produced as "Confidential" or "Highly Confidential." *Id.* at ¶ 11.

October 27, 2023 order (ECF No. 327), these materials were provisionally filed under seal. Of the 241 exhibits that were filed provisionally under seal, UA is not seeking the continued sealing of 108 documents. By this Motion to Seal, UA moves to seal only (a) 21 exhibits in full; and (b) 112 exhibits in part, which it will file publicly with redactions. UA also moves to file several memoranda of law (and an appendix to one of the memoranda of law) with redactions of information reflecting sealed information in those exhibits.[3] The material that UA seeks to redact or seal, as appropriate, contains:

- Personal contact information of UA's Board members and personal health information about a non-party.[4]

- Proprietary market data and information that UA is obligated to keep confidential by virtue of an agreement with a third party or a court order.

- Competitively sensitive information, including documents reflecting UA's business strategies; detailed sales and financial data; information about product development, design, pricing, sales, and pipeline; and details concerning UA's relationships with its customers, including specific contractual and sales information.

## LEGAL STANDARD

"Whether a court document should be sealed requires consideration of the standard set forth in *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567 (4th Cir. 2004)." *Weisheit v. Rosenberg & Assocs., LLC*, 2019 WL 3208661, at *13 (D. Md. July 16, 2019) (Bredar, C.J.). In *Washington Post*, the Fourth Circuit explained that "[t]he right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the

---

[3] UA has filed on the public docket (a) documents that had previously been provisionally filed under seal and for which it is not seeking sealing in this motion, and (b) redacted versions of documents that had previously been provisionally filed under seal and for which it is only seeking to seal a portion of the document.

[4] For the Court's convenience, the attached appendices set forth which documents UA seeks to redact or seal entirely, together with the bases for redaction or sealing. Appendix A is organized by document and lists whether UA seeks to redact or seal the document. Appendix B is organized by category and lists the documents that contain information in each category.

First Amendment." 386 F.3d at 575.

Documents submitted in connection with a summary judgment motion "can only be sealed if they pass [the] First Amendment test. Thus, the proponent of sealing such documents must proffer a compelling governmental interest and must show that the proposed sealing is narrowly tailored to serve that interest." *Weisheit*, 2019 WL 3208661, at *13; *see also Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (requiring a showing of "an important governmental interest" and that "there is no less restrictive way to serve that governmental interest" for sealing at the summary judgment stage). The narrow tailoring prong can be satisfied by "redacting only key words and phrases," which "balances both the public's and [a party's] interests." *Lifenet Health v. Lifecell Corp.*, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015). Where redaction "would be burdensome and would leave little of the record unredacted," sealing in full rather than redaction is appropriate. *Lasway v. Baran*, 2023 WL 4085877, at *10 (D. Md. June 20, 2023) (Chasanow, J.).

Documents submitted to the court in connection with non-dispositive motions only need to meet the common law test, which allows the presumption of access to judicial records to "be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253.[5]

---

[5] When documents are filed in connection with a summary judgment motion but not relied upon by the court in rendering its opinion, the public's First Amendment interest in access may be lowered. *See, e.g.*, *Weisheit*, 2019 WL 3208661, at *13 (allowing exhibits to remain sealed "since the Court did not consider them in deciding the summary judgment motions"); *Jones v. Lowe's Companies, Inc.*, 402 F. Supp. 3d 266, 291-92 (W.D.N.C. 2019), *aff'd*, 845 F. App'x 205 (4th Cir. 2021) (no First Amendment interest in deposition testimony identified for redaction where "the Court did not rely on most of the testimony identified in rendering its decision"). Courts have also held that the common law test, rather than the First Amendment test, applies to documents filed in connection with *Daubert* motions. *See Kadel v. Folwell*, 620 F. Supp. 3d 339, 391 (M.D.N.C. 2022) (applying lower common law standard and granting motion to seal document filed in connection with *Daubert* motion that was filed at summary judgment stage).

The party seeking protection must provide the court with "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11.

## ARGUMENT

### I. Confidential Information of Non-Parties

Information "protected by confidentiality and non-disclosure agreements," disclosure of which could "harm . . . third-party interests," may overcome "the First Amendment presumption of access." *Lifenet*, 2015 WL 12517430, at *3. As described below, UA seeks protection of documents containing information subject to confidentiality provisions or other agreements, or information otherwise containing the confidential information of non-parties. As UA has proposed narrowly-tailored redactions wherever possible, there is no less restrictive means of protecting the documents. *See Under Armour, Inc. v. Body Armor Nutrition, LLC*, 2013 WL 5923757, at *2 (D. Md. Nov. 1, 2013) (Bredar, J.) ("*Body Armor*") (sealing documents "is the least restrictive means of protecting the information contained therein," particularly where UA "has provided redacted versions of the documents it seeks to seal so as to ensure" public access).

**Personal Contact Information and Personal Health Information of Non-Parties.** In one document (PX 132), UA seeks to redact contact information (specifically, personal email addresses and cell phone numbers) of its Board members, which is a "well established" ground for redaction. *See Rothman v. Snyder*, 2020 WL 7395488, at *4 (D. Md. Dec. 17, 2020) (Messitte, J.) (collecting cases). In one other document (PX 153), UA seeks to redact the

---

Because UA cannot predict which documents the Court will rely upon in ruling on Defendants' summary judgment motion, UA has assumed for purposes of this motion that all documents that have been submitted to the Court—even those documents that as a technical matter were submitted to the Court in connection with the *Daubert* motions rather than the summary judgment motion—are subject to the First Amendment standard.

personal health information of a non-party, which is likewise a recognized basis for redaction. *See Honeywell Int'l Inc. v. Opto Elecs. Co., LTD.*, 2023 U.S. Dist. LEXIS 105509, at *3 (W.D.N.C. June 15, 2023) (granting motion to seal documents referencing "the private and sensitive health information" of a non-party). Plaintiffs do not object to the redaction in PX 132 of the personal contact information of UA's Board members or the redaction in PX 153 of the personal health information of a non-party.

**Non-public Information of Non-Parties.** Courts in the Fourth Circuit routinely protect from disclosure the information of non-parties because they are "not involved in" the litigation. *See Kantsevoy, v. LumenR, LLC*, 2017 WL 11456498, at *5 (D. Md. Nov. 27, 2017) (Gesner, M.J.). This includes both "materials provided by third-parties pursuant to subpoena which the third-parties have requested remain confidential" and documents containing "commercial information belonging" to a non-party. *Trana Discovery, Inc. v. S. Rsch. Inst.*, 2017 WL 3709069, at *8 (E.D.N.C. Aug. 28, 2017), *aff'd*, 915 F.3d 249 (4th Cir. 2019) (sealing documents produced by third parties); *Coleman Co., Inc. v. Team Worldwide Corp.*, 2021 WL 8742082, at *2 (E.D. Va. Dec. 2, 2021) (sealing documents containing non-party information).

Here, the exhibits to the parties' briefing include several documents that were produced by non-parties to this action and those documents should remain under seal. *See, e.g.*, PX 58 (produced by non-party UA customer and marked as "Highly Confidential" by the non-party). In addition, several of the exhibits are documents produced by UA that contain "highly sensitive financial and business information belonging to . . . third-parties" that is "not generally available to the public." *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 901958, at *2 (E.D.N.C. Mar. 15, 2011). It is appropriate to seal such information. *See Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, 2022 WL 1127107, at *3 (W.D.N.C. Apr. 14, 2022) (information reflecting

"private interests - particularly with respect to non-parties who have not brought any dispute to the Court" may be "sufficient to overcome the First Amendment right of access."). For example, DX 71 contains confidential data on the number of shoppers who visited certain shopping centers that was provided to UA by a non-party to this action. DX 71 at -77199. The disclosure of such information could competitively disadvantage the shopping centers' operator.

**Information Subject to a Confidentiality Agreement.** Courts often permit parties to file under seal information that is subject to contractual confidentiality requirements. *See, e.g.*, *Constellation Newenergy, Inc. v. Om Vegetable Inc.*, 2021 WL 5839315, at *2 (D. Md. Dec. 9, 2021) (Chasnow, J.) (sealing exhibits containing confidential "terms and conditions" of settlement agreement); *Kantsevoy*, 2017 WL 11456498, at *4 (sealing confidential consulting agreement with third party); *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, 2017 WL 9481050, at *2 (E.D. Va. Dec. 5, 2017) (sealing "private and confidential settlement agreements" with non-parties to the litigation). Sealing such information is particularly appropriate where the disputed information is not "relevant or central" to the claims at issue. *Kantsevoy*, 2017 WL 11456498, at *4. Here, UA seeks to seal information protected by non-disclosure agreements and settlement agreements with non-parties that contain confidentiality provisions. *See, e.g.*, DX 53 at -42318 (proposed redaction of information regarding non-public partnerships unrelated to this case and subject to confidentiality agreements), -42319 (proposed redaction of information about non-public settlement agreement in unrelated litigation with a competitor); Herber Decl. ¶ 6.

**Market Data.** It is also appropriate to seal data about the market in which UA operates, which data was collected by UA on a proprietary basis from non-parties or received pursuant to agreements with third-party data services. *See, e.g.*, *Duke Energy*, 2022 WL 1127107, at *3 (sealing a non-party consultant's "confidential assessment" of third-party bids that reflected non-

party's "private interests"). In *Body Armor*, for example, Judge Bredar granted UA's motion to seal "proprietary market studies." 2013 WL 5923757, at *2. Here, UA seeks to redact similar information. For example, in DX 71, UA seeks redaction of comparisons of UA's pricing against its competitors. *See* DX 71 at -77187-77189, -77191, -77192. UA often obtains such information from third parties via subscription or data-sharing agreements. Herber Decl. ¶ 6; *see also, e.g.*, DX 71 at -77187-89 (listing third-party source for data). Disclosure of that information (as well as documents reflecting UA's use of that information) could harm providers of those services, who could "lose the ability to keep data confidential, [thus] disincentivizing" use of their services. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 499 F. Supp. 3d 505, 515 (S.D. Ohio 2020) (granting motion to seal market data obtained from a third-party provider).

## II.   Competitively Sensitive Information

An interest in protecting "confidential commercial information" can be "significant enough to outweigh the First Amendment right of access." *Lifenet*, 2015 WL 12517430, at *4; *see also Woven Elecs. Corp. v. Advanced Grp., Inc.*, 1991 WL 54118, at *6 (4th Cir. Apr. 15, 1991) ("One exception to the public's right of access is where such access to judicial records could provide a source of business information that might harm a litigant's competitive standing.").

Courts in the Fourth Circuit have held that a company's competitively sensitive information warrants sealing even where the First Amendment right attaches. Indeed, in an unrelated action, a court in this District granted UA's motion to seal at summary judgment because the information in question had "the potential to put Under Armour at an unfair commercial disadvantage." *Body Armor*, 2013 WL 5923757, at *2. There, UA sought to seal information "about how existing products are being marketed and sold as well as plans for the

possible development of new product lines," as well as marketing studies, because "[d]isclosing this information would provide insight into Under Armour's business strategies, sales, and marketing, thereby placing Under Armour at a competitive disadvantage." *Id.* The court held that this information could remain under seal because revealing it could "put Under Armour at an unfair commercial disadvantage" and because UA had redacted documents to "ensure the public has access to non-proprietary information." *Id.*

For the same reasons, the limited customer information, strategic information, product information, and sales data that UA seeks to redact or seal in this case (as described below) is competitively sensitive information that meets the standard for sealing at the summary judgment stage. Given the commercial sensitivity of this information, there are no alternatives to redaction or sealing that would provide sufficient protection.

**Customer Information.** Exhibits and briefing before the Court include details of business terms and negotiations between UA and its customers, as well as UA's internal discussions about its relationships with customers. For example, PX 150 discusses negotiations between UA and a customer, including discussion about discounting and concessions. UA seeks only to redact the customer's name. Similarly, the reports of Plaintiffs' expert Mark A. Cohen compile information on specific commercial terms (including discounts, returns agreements, and payment terms) between UA and several customers, specifically identifying those customers by name. *See* DX 21 ¶ 83 n. 132. The disclosure of such information would provide competitors and customers with valuable insight into UA's relationships with the customers identified by name in these reports, thereby damaging UA's ability to operate competitively in the marketplace. Herber Decl. ¶ 5; *see also Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 883-84 (D. Md. 2015) (Chasanow, J.), *aff'd*, 888 F.3d 271 (4th Cir, 2018)

(redactions warranted to protect information concerning negotiations and favorable contract terms with customers).

Other similar materials that UA seeks to redact (or seal, as appropriate) provide granular insight into customer sales data and reflect strategic insight into business dynamics with particular customers. *See, e.g.*, DX 71 at -77186 (assessing customer's sales of UA products in different product categories and at different price points). Redaction of this information is necessary to prevent competitors from gleaning "insight on target opportunities and [UA's] commercial approach." *Sempowich v. Tactile Sys. Tech., Inc.*, 2020 WL 2789792, at *5 (E.D.N.C. May 29, 2020).

**Strategic Information.** Courts grant motions to seal information that would reveal corporate strategy because such information is competitively sensitive. Information that, for example, discusses a company's "commercial approach" and its "plan relative to growth opportunities" has been sealed at summary judgment. *Sempowich*, 2020 WL 2789792, at *3-4 (granting motion to seal where the company "appropriately limited through redaction access only to the sensitive information").

UA seeks protection of documents containing information that reveals its business strategy. For example, DX 71 contains detailed information about UA's views on how to position itself competitively in the changing marketplace and PX 71 contains information on UA's advertising and pricing policies. Allowing this and similar confidential information about UA's business strategies to become public would cause competitive harm to UA. Herber Decl. ¶ 5. Specifically, the release of this information would provide UA's competitors with valuable insight into how UA competes in the marketplace, how UA executes a product launch with a strategic partner, and how UA prices and advertises its products—all of which UA's competitors

could use to UA's disadvantage.  This meets the standard for sealing.  *See, e.g.*, *Body Armor*, 2013 WL 5923757, at *2 (sealing "information [that] would provide insight into Under Armour's business strategies . . . thereby placing Under Armour at a competitive disadvantage").

**Product Information**.  Confidential information relating to a company's products is also commonly sealed in the Fourth Circuit.  *See Body Armor*, 2013 WL 5923757, at *2 (allowing information about how existing products are marketed and sold to remain under seal); *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 2007 WL 9782461, at *6 (D. Md. Sept. 17, 2007) (Chasanow, J.) (allowing documents containing "details of sales" and information about "who is buying what types of Sensormatic products in what quantities at what prices" to remain under seal); *Coleman Co., Inc. v. Team Worldwide Corp.*, 2021 WL 8742082, at *2 (E.D. Va. Dec. 2, 2021) (allowing product specification sheets to remain under seal).  Should this information be released, UA's competitors would gain insight into the performance of specific products, decisions surrounding product specifications, and information about how UA sells and markets specific products or lines.  Herber Decl. ¶ 5.  To that end, UA has made limited redactions of confidential information relating to products that UA currently offers or that may be offered in the future.  *See, e.g.*, DX 71 at -77160 (redacting chart that reflects the seasonal sales cadence of particular styles of polo shirts); *id.* at -77201 (redacting information about product performance).  These narrowly-tailored redactions are the least restrictive means of protecting this type of confidential, competitively sensitive information.

**Sales Data.**  Courts within the Fourth Circuit have also allowed sales and financial data that are "not ordinarily public" to remain under seal even under the more stringent First Amendment standard.  *Sempowich*, 2020 WL 2789792, at *3 (permitting redaction of "regional sales and performance data"); *see also Ultra-Mek, Inc. v. United Furniture Indus., Inc.*, 2021 WL

8533815, at *4 (M.D.N.C. March 22, 2021) (sealing expert report containing "sensitive sales information" and brief reflecting "sales . . . information" including "sales volumes"). Here, UA has appropriately limited its sealing requests to only the most sensitive confidential sales and performance data. *See, e.g.*, PX 71 at -4738 (redacting Black Friday sales data of product categories and comparing brick and mortar sales to online sales). These redactions are necessary because competitors could use this data to formulate their own business strategies and because the redacted sales data continues to inform UA's strategy today. Herber Decl. ¶ 5. Should this information be released to the public, UA will be at a competitive disadvantage. *Id.* There is no less restrictive alternative to sealing available and UA has proposed "less drastic alternatives to sealing" by redacting its "filings so as to allow public access to as much information as possible without compromising sensitive business information." *Ultra-Mek*, 2021 WL 8533815, at *5.

## CONCLUSION

For the foregoing reasons, UA's Motion to Seal should be granted.

DATED: December 22, 2023             Respectfully submitted,


By:  ____*/s/ G. Stewart Webb, Jr.*____
      G. Stewart Webb, Jr. (Bar No. 00828)

VENABLE LLP
William B. King (Bar No. 19643)
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone:  410/244-7565
410/244-7742 (fax)
gswebb@venable.com
wbking@venable.com

FRIED, FRANK, HARRIS,
  SHRIVER & JACOBSON LLP
James D. Wareham (Bar No. 22890)
801 17th Street, NW
Washington, DC 20006
Telephone: 202/639-7000
202/639-7003 (fax)
james.wareham@friedfrank.com

Samuel P. Groner (*pro hac vice*)
Michael P. Sternheim (*pro hac vice*)
Anne S. Aufhauser (*pro hac vice)*
One New York Plaza
New York, NY 10004
Telephone: 212/859-8000
212/859-4000 (fax)
samuel.groner@friedfrank.com
michael.sternheim@friedfrank.com
anne.aufhauser@friedfrank.com

*Counsel for Defendant Under Armour, Inc.*