**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION | ) ) ) | Civil No. RDB-17-388 |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   OVERVIEW OF THE ACTION ...............................................................................4

    A.   Factual Background .........................................................................................4

    B.   Procedural History ..........................................................................................5

    C.   Settlement Benefits .......................................................................................10

        1.   Separation of Chair and CEO Roles .....................................................10

        2.   Compensation .......................................................................................11

III.  ARGUMENT ...........................................................................................................11

    A.   The Proposed Settlement Warrants Preliminary Approval....................................11

        1.   Standards for Preliminary Approval of a Proposed Class Action
            Settlement ...........................................................................................11

    B.   The Court Will Likely Be Able to Approve the Proposed Settlement
        Under Rule 23(e)(2)................................................................................13

        1.   Lead Plaintiff and Lead Counsel Zealously Represented the Class ..........13

        2.   The Settlement Is the Product of Good Faith, Informed, and
            Arm's-Length Negotiations by Experienced Counsel .............................15

        3.   The Settlement Provides Significant and Certain Benefits and Is
            Well Within the Range of Approval ........................................................17

        4.   The Settlement Satisfies the Remaining Rule 23(e)(2) Factors................21

            a.   The Effectiveness of Any Proposed Method of Distributing
                Relief to the Class, Including the Method of Processing
                Class-Member Claims...................................................................21

            b.   Attorneys' Fees ..........................................................................22

            c.   The Parties Have No Other Agreements Besides One
                Concerning Opt-Outs...................................................................23

        5.   Class Members Are Treated Equitably Relative to One Another..............24

    C.   Notice to the Class Should Be Approved .............................................................25

4893-3488-3020.v2

**Page**

IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................27

V.    CONCLUSION ...........................................................................................................28

4893-3488-3020.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
    28 F.4th 513 (4th Cir. 2022) ...................................................................14

*Aberdeen City Council v. Bloomberg L.P.*,
    688 F. Supp. 3d 169 (S.D.N.Y. 2023)......................................................8

*Beaulieu v. EQ Indus. Servs.*,
    2009 WL 2208131 (E.D.N.C. Apr. 20, 2009)........................................25

*Boger v. Citrix Sys., Inc.*,
    2023 WL 1415625 (D. Md. Jan. 31, 2023)......................................11, 25

*Boyd v. Coventry Health Care*,
    299 F.R.D. 451 (D. Md. 2014)................................................................17

*Dickman v. Banner Life Ins. Co.*,
    2020 WL 13094954 (D. Md. May 20, 2020),
    *aff'd by Banner Life*, 28 F.4th 513 (4th Cir. 2022).............................15, 22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................25, 26

*Feinberg v. T. Rowe Price Grp., Inc.*,
    610 F. Supp. 3d 758 (D. Md. 2022) .......................................................15

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ...........................................................18, 20

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    2024 WL 1341122 (D.S.C. Mar. 29, 2024) ...........................................16

*In re BankAtlantic Bancorp, Inc.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
    *aff'd on other grounds*, 688 F.3d 713 (11th Cir. 2012) .........................20

*In re Cap. One Consumer Data Sec. Breach Litig.*,
    2022 WL 18107626 (E.D. Va. Sept. 13, 2022)......................................20

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ...............................................22, 27

4893-3488-3020.v2

**Page**

*In re HealthSouth Corp. Sec. Litig.*,
334 F. App'x 248 (11th Cir. 2009) ........................................................................23

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .........................................................13, 15, 18, 20

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.,*
*Sales Pracs. & Prods. Liab. Litig.*,
952 F.3d 471 (4th Cir. 2020) ...............................................................................16

*In re Lyft Inc. Sec. Litig.*,
2023 WL 2960006 (N.D. Cal. Mar. 16, 2023)....................................................24

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001) .............................................................17, 25

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ..........................................................................20

*In re NeuStar, Inc. Sec. Litig.*,
2015 WL 5674798 (E.D. Va. Sept. 23, 2015).........................................13, 18, 27

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ...............................................................................24

*In re Peanut Farmers Antitrust Litig.*,
2021 WL 3174247 (E.D. Va. July 27, 2021)........................................................24

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990) ........................................................................22

*In re Tesla Inc., Sec. Litig.*,
2023 WL 4032010 (N.D. Cal. June 14, 2023) .....................................................18

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 12241829 (D. Md. Sept. 10, 2013) ......................................................23

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 5182093 (D. Md. Sept. 10, 2023) ...................................................12, 18

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 6577029 (D. Md. Dec. 13, 2013)..........................................................22

4893-3488-3020.v2

**Page**

*In re Tyson Foods, Inc.*,
    2010 WL 1924012 (D. Md. May 11, 2010)......................................................15, 16

*In re Under Armour Sec. Litig.*,
    2020 WL 363411 (D. Md. Jan. 22, 2020)............................................................6, 7

*In re Under Armour Sec. Litig.*,
    2021 WL 633373 (D. Md. Feb. 18, 2021) ...............................................................7

*In re Under Armour Sec. Litig.*,
    2024 WL 1635680 (D. Md. Apr. 16, 2024)...........................................................10

*In re Under Armour Sec. Litig.*,
    2024 WL 811478 (D. Md. Feb. 26, 2024) ....................................................3, 5, 10

*In re Under Armour Sec. Litig.*,
    342 F. Supp. 3d 658 (D. Md. 2018)...................................................................5, 6

*In re Under Armour Sec. Litig.*,
    409 F. Supp. 3d 446 (D. Md. 2019)......................................................................6

*In re Under Armour Sec. Litig.*,
    540 F. Supp. 3d 513 (D. Md. 2021)................................................................4, 5, 7

*In re Under Armour Sec. Litig.*,
    631 F. Supp. 3d 285 (D. Md. 2022)..................................................................8, 14

*In re Under Armour Sec. Litig.*,
    815 F. App'x 748 (4th Cir. 2020) ........................................................................7

*McAdams v. Robinson*,
    26 F.4th 149 (4th Cir. 2022) ..............................................................................22

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)...........................................................................................25

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016),
    *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 17, 2017)............................................24

*Phillips v. Triad Guaranty, Inc.*,
    2016 WL 1175152 (M.D.N.C. Mar. 23, 2016).....................................................17

4893-3488-3020.v2

Page

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...................................................................20

*Robinson v. Nationstar Mortg. LLC*,
2020 WL 13119703 (D. Md. Aug. 19, 2020) ..............................................25

*S. C. Nat'l Bank v. Stone*,
749 F. Supp. 1419 (D.S.C. 1990)................................................................11

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ................................................................23

*Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*,
2006 WL 8446464 (D.S.C. Aug. 15, 2006)................................................22

*Velasquez Monterrosa v. Mi Casita Rests.*,
2017 WL 11829699 (E.D.N.C. Sept. 26, 2017)..........................................11

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§78j(b)...........................................................................................................6
§78t(a).......................................................................................................4, 6
§78u-4(a)(7)................................................................................................25

Federal Rules of Civil Procedure
Rule 23 ................................................................................................ *passim*
Rule 23(c)(2)(B).........................................................................................25
Rule 23(e)..........................................................................................1, 11, 12
Rule 23(e)(1)...............................................................................................12
Rule 23(e)(1)(B)..........................................................................................12
Rule 23(e)(2)....................................................................................... *passim*
Rule 23(e)(2)(A)..........................................................................................13
Rule 23(e)(2)(B).....................................................................................13, 15
Rule 23(e)(2)(C)..........................................................................................17
Rule 23(e)(2)(C)(i).................................................................................13, 20
Rule 23(e)(2)(C)(ii).....................................................................................22
Rule 23(e)(2)(C)(iii)....................................................................................22
Rule 23(e)(2)(C)(iv)....................................................................................23
Rule 23(e)(3)...............................................................................................12

17 C.F.R.
§240.10b-5.................................................................................................4, 6

**Page**

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons,
*Securities Class Action Settlements:*
*2023 Review & Analysis* (Cornerstone Research 2024) ..........................................................18

4 William B. Rubenstein,
*Newberg on Class Actions* (6th ed. 2024)
§13:12 ...................................................................................................................12

Lead plaintiff Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("NESPF" or "Lead Plaintiff"),[1] on behalf of itself and all other members of the Class,[2] respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action"), pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").  The terms of the proposed Settlement are set forth in the Settlement Agreement, which was entered into by all Parties to the litigation.[3]

## I.    PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this securities class action in exchange for $434,000,000 (the "Settlement Amount") and certain non-monetary Settlement benefits.  Lead Plaintiff now moves the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to preliminarily approve the proposed Settlement.

The Settlement came virtually on the eve of trial, after seven years of hard-fought litigation, and at a time when the Parties were fully aware of the strengths and potential weaknesses of their respective positions.   As set forth below, the Settlement was reached following years-long negotiations between experienced counsel, with the assistance of the Honorable Layn R. Phillips

---

[1]    All capitalized terms used and not otherwise defined in this memorandum have the meanings ascribed to them in the Settlement Agreement, dated as of July 12, 2024, which is attached as Exhibit 1 to the Declaration of Robert R. Henssler Jr. ("Henssler Decl."), filed herewith.  Emphasis is added and internal citations are omitted throughout unless otherwise noted.

[2]    The "Class" includes all persons and entities who purchased or otherwise acquired Class A and Class C common stock of Under Armour between September 16, 2015, and November 1, 2019, inclusive (the "Class Period").

[3]    Defendants are Under Armour, Inc. ("Under Armour" or the "Company") and Kevin A. Plank ("Plank") (collectively, the "Defendants," and with Lead Plaintiff, the "Parties").

4893-3488-3020.v2

(ret.) ("Judge Phillips") of Phillips ADR Enterprises, a highly respected mediator who has extensive experience in complex securities litigation.

The Settlement is an excellent result for the Class. It represents the second largest securities class action settlement *ever* in Maryland and the entire Fourth Circuit, and the largest Private Securities Litigation Reform Act of 1995 ("PSLRA") settlement in this Circuit in over 17 years. The Settlement likely will rank within the top 50 largest settlements obtained to date in a securities fraud class action.[4] Further, it represents ***more than 48 times*** the $9,000,000 settlement the SEC reached with Under Armour in 2021.[5]

To say that this litigation took an unorthodox route to finally end with a recovery of this magnitude – on the brink of a jury trial scheduled for July 15, 2024 – would be a gross understatement. More than seven years ago, this Court appointed NESPF to serve as lead plaintiff. ECF 13. Since then, NESPF has led a class of Under Armour investors through: (1) two dismissals – including one with prejudice (ECFs 75, 99); (2) an opposed motion to reopen the litigation following the publication of a November 3, 2019 article by *The Wall Street Journal* ("*WSJ*") that revealed governmental investigations into Under Armour's public statements and accounting practices concerning customer demand and pull-forwards (ECF 150); (3) an opposed motion for an F.R.C.P. 62.1 indicative ruling that brought the litigation back to this Court from a pending appeal to the Fourth Circuit (ECF 140); (4) the defeat of Defendants' motion to dismiss the Consolidated Third Amended Complaint for Violations of the Federal Securities Laws ("TAC") (ECF 174); (5) an opposed motion for class certification (ECF 246); (6) the defeat of Defendants' motion for summary

---

[4]  As measured by ISS Securities Class Action Services. *See* Henssler Decl., Ex. 2 (The Top 100 U.S. Class Action Settlements of All Time as of December 31, 2023) (ISS Sec. Class Action Servs. 2024).

[5]  *See* https://www.sec.gov/news/press-release/2021-78.

4893-3488-3020.v2

judgment (ECF 378); and (7) the defeat of Defendants' motion to exclude (in whole or in part) every one of Lead Plaintiff's proposed expert witnesses scheduled to testify at trial. ECF 389.[6] Accordingly, the Settlement was only reached after the merits of the claims were tested at every turn and by counsel who had a keen understanding of the claims at an advanced stage of the litigation.

In addition to the extraordinary result for the Class and the arduous path taken to litigate this Action, other reasons justify preliminarily approving the Settlement. Plaintiffs and their counsel, having brought the litigation nearly to trial, strongly endorse the Settlement. Lead Plaintiff and class representatives Monroe County Employees' Retirement System ("Monroe County") and KBC Asset Management ("KBC," and together with Lead Plaintiff and Monroe County, "Plaintiffs") are sophisticated institutional investors. Lead Counsel have substantial securities litigation experience and are widely recognized as leading experts in the field. Lead Plaintiff retained these attorneys specifically because of their expertise and acumen in large complex securities matters like this one. In accepting the mediator's proposal, Lead Plaintiff and Lead Counsel understood that there were serious risks in continued litigation. Although Lead Plaintiff believes strongly in the merits of its case, Defendants do too. At trial, Lead Plaintiff would have had the burden of proving each of the elements of its securities fraud claims over Defendants' defenses. Trial would have been very expensive, and either party could have prevailed. Lead Plaintiff recognizes that even if it and the Class were to prevail at trial, Defendants likely would appeal any favorable judgment, delaying and possibly jeopardizing any recovery. Accordingly, Lead Plaintiff respectfully submits that the Settlement is in the best interests of the Class, represents a significant recovery, and merits preliminary approval.

---

[6]     *See also In re Under Armour Sec. Litig.*, 2024 WL 811478, at *9 (D. Md. Feb. 26, 2024) ("*UA SJ*") (discussing procedural history of the litigation).

4893-3488-3020.v2

The proposed Notice Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Settlement Agreement; (ii) approve the form and content of the: (A) Notice of Proposed Settlement of Class Action ("Notice"); (B) the Proof of Claim and Release form ("Claim Form"); and (C) the Summary Notice, attached as Exhibits A-1, A-2, and A-3 to the Notice Order; (iii) find that the procedures for distribution of the Notice and Claim Form and the publication of the Summary Notice – similar to the Court-approved procedures for the Notice of Pendency of Class Action ("Notice of Pendency") – constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA; (iv) set deadline for Class Members to object to any aspect of the Settlement; and (v) set a date and time for the Settlement Hearing.

## II.     OVERVIEW OF THE ACTION

### A.     Factual Background

The allegations and claims in this Action are familiar to the Court, and Lead Plaintiff only briefly describes them at this preliminary approval stage.  In short, Lead Plaintiff alleged that during the September 16, 2015, to November 1, 2019 Class Period, Defendants made materially false or misleading statements in violation of §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b-5 promulgated thereunder, §20(a) of the Exchange Act, and §20A of the Exchange Act, which caused the price of Under Armour stock to trade at artificially inflated prices. Specifically, Lead Plaintiff alleged that Defendants misled investors that "consumer demand for the company's products was strong between the third quarter of 2015 and the fourth quarter of 2016" and that "Under Armour's 26-consecutive quarter 20% year-over-year revenue growth streak was 'safely intact,' when in reality demand for the company's products was in decline."  *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513, 517 (D. Md. 2021) ("*UA III*").  Lead Plaintiff further

- 4 -

alleged "that Defendants manipulated the company's financial results by pulling sales forward from future quarters and engaged in other allegedly suspect sales practices." *Id.* Lead Plaintiff alleged "the 'truth regarding [Under Armour]'s operational and financial condition' slowly leaked out 'in a series of partial disclosures that resulted in statistically significant stock price declines and investor losses as the artificial inflation in the Company's stock price dissipated.'" *UA SJ*, 2024 WL 811478, at *8 (alteration in original).

### B.    Procedural History

On February 10, 2017, a class action complaint was filed by Brian Breece against Under Armour, Plank, and the Company's former Chief Financial Officer ("CFO"), Lawrence Molloy ("Molloy"). ECF 1. The Court consolidated all related cases on March 23, 2017, and recaptioned it as *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388-RDB. ECF 3. On April 26, 2017, the Court appointed NESPF as Lead Plaintiff, and approved NESPF's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel, and Silverman, Thompson, Slutkin, White LLC as local counsel. ECF 13.

Lead Plaintiff filed the [Corrected] Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC") on August 9, 2017. ECF 30. The CAC asserted claims on behalf of all persons who purchased or otherwise acquired Under Armour's publicly traded securities between September 16, 2015 and January 30, 2017, inclusive. *Id.* at 1, ¶2. The CAC named as defendants Under Armour, Plank, Molloy, former Under Armour CFO Brad Dickerson, members of the Company's Board of Directors, and various underwriters. All defendants named in the CAC thereafter moved to dismiss on November 9, 2017 (ECF 51-52), which Lead Plaintiff opposed (ECFs 55-56), and on September 19, 2018, the Court granted defendants' motions. *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 694 (D. Md. 2018) ("*UA I*").

Less than two months after the Court issued *UA I*, Lead Plaintiff filed the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws ("SAC") on November 16, 2018. ECF 78. The SAC only named Under Armour and Plank as defendants, who moved to dismiss the SAC on January 17, 2019 (ECF 80). Lead Plaintiff opposed that motion (ECF 86), and, on August 19, 2019, the Court dismissed the SAC with prejudice. *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 463 (D. Md. 2019) ("*UA II*").

Lead Plaintiff filed a notice of appeal with the Fourth Circuit on September 17, 2019. ECFs 102, 104. Lead Plaintiff's opening appellate brief was originally due on November 5, 2019; however, two days before on November 3, 2019, the *WSJ* published an article titled "'Under Armour is Subject of Federal Accounting Probe'" which reported that "'Federal law-enforcement officials are investigating Under Armour Inc.'s accounting practices in a probe examining whether the sportswear maker shifted sales from quarter to quarter to appear healthier, according to people familiar with the matter.'" *In re Under Armour Sec. Litig.*, 2020 WL 363411, at *5 (D. Md. Jan. 22, 2020) ("*UA Indicative Ruling*"). On the following day, Under Armour publicly filed an 8-K stating that it confirmed to the *WSJ* "'that it has been responding to requests for documents and information from the SEC and DOJ regarding certain of the Company's accounting practices and related disclosures, beginning with submissions to the SEC in July 2017.'" *Id.*

On November 6, 2019, following the revelation of the SEC and DOJ investigations, Kirtan Patel filed a putative securities class action complaint against Under Armour, Plank, Molloy, Frisk, and Bergman for violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of all persons or entities who purchased or otherwise acquired Under Armour securities between August 3, 2016 and November 1, 2019 ("*Patel* Action"). *See Patel v. Under Armour, Inc.*, No. 1:19-cv-03209-RDB (D. Md.).

- 6 -

On November 18, 2019, Lead Plaintiff NESPF filed its Motion to Consolidate and Vacate Notice and Lead Plaintiff Deadline – a motion opposed by both the plaintiff in the *Patel* Action as well as Defendants.  ECFs 107, 115, 120.  Also on November 18, 2019, Lead Plaintiff separately filed its: (1) Request for an Indicative Ruling Under Fed. R. Civ. P. 62.1 (ECF 105) ("Rule 62.1 Motion"); and (2) Motion for Relief from the Court's September 9, 2019 Judgment Pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b) Motion") (ECF 106).  Defendants vigorously opposed both motions. ECFs 119, 121.  After conducting a hearing, the Court granted Lead Plaintiff's Rule 62.1 motion on January 22, 2020.  *See UA Indicative Ruling*, 2020 WL 363411, at *9.

On August 13, 2020, the Fourth Circuit remanded the Action back to this Court.  *See In re Under Armour Sec. Litig.*, 815 F. App'x 748, 749 (4th Cir. 2020).

On September 14, 2020, the Court granted NESPF's Rule 60(b) Motion and also appointed NESPF to continue to serve as lead plaintiff in the newly consolidated action and Robbins Geller to serve as lead counsel.  ECF 150.

On October 14, 2020, Lead Plaintiff filed the TAC.  ECF 153.  While the motion to dismiss briefing was pending, Lead Plaintiff moved to partially lift the PSLRA discovery stay to seek the production of documents Under Armour reviewed and produced to the SEC (ECF 156) – a motion that Defendants opposed.  ECF 160.  After conducting a hearing, the Court denied Lead Plaintiff's motion to partially lift the discovery stay on February 18, 2021.  *See In re Under Armour Sec. Litig.*, 2021 WL 633373, at *4 (D. Md. Feb. 18, 2021).  Several months later, on May 19, 2021, the Court denied Defendants' motion to dismiss the TAC in full.  *See UA III*, 540 F. Supp. 3d at 524.

Defendants answered the Complaint on July 23, 2021 (ECF 185), and the Parties began formal fact discovery.  Discovery was hard-fought: the Parties held extensive discussions regarding the method and form of both Parties' document productions, including lengthy negotiations over

which search terms and custodians to apply for collecting documents, and briefed Lead Plaintiff's motion to compel regarding Defendants' assertion of attorney work-product protection over documents related to the Company's public disclosures. *See* ECFs 264, 271, 284. Lead Plaintiff also moved to compel documents from Bloomberg L.P. ("Bloomberg") seeking relevant communications and documents sent or received by its former reporter, in connection with a January 2016 analyst report from Morgan Stanley that was critical of Under Armour's financial health and performance. Bloomberg zealously opposed Lead Plaintiff's motion, and eventually, a court in the Southern District of New York denied the motion to compel. *See Aberdeen City Council v. Bloomberg L.P.*, 688 F. Supp. 3d 169, 174, 184 (S.D.N.Y. 2023).

Ultimately, Defendants produced – and Lead Counsel analyzed and reviewed – more than 307,000 documents (encompassing in excess of 1.3 million pages) from nearly 50 custodians. Additionally, after subpoenaing more than 60 third parties – and together with the third parties subpoenaed by Defendants – Lead Counsel reviewed more than 250,000 additional documents, totaling more than 2 million pages. Lead Counsel also took 42 fact witness depositions, and the Parties exchanged hundreds of pages of admissions and sworn interrogatory responses. Lead Plaintiff NESPF, along with fellow Class Representatives Monroe County and KBC, produced tens of thousands of pages of documents, sat for depositions, and provided responses to document requests and interrogatories.

On September 29, 2022, after extensive briefing from the Parties, the Court certified a class of all persons and entities who purchased or otherwise acquired Class A and Class C common stock of Under Armour during the September 16, 2015, through November 1, 2019 Class Period. *See In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 313 (D. Md. 2022) ("*UA Class Cert*"). The Court

appointed NESPF, Monroe County, and KBC as Class Representatives and appointed Robbins Geller as Class Counsel.

On August 24, 2023, the Court issued its Order Granting Class Representatives' Uncontested Motion for Entry of an Order Approving Notice of Pendency of Class Action, Notice Procedures, and Appointment of Notice Administrator (the "Class Notice Order") (ECF 294), which required any persons or entities wishing to exclude themselves from the Class do so with a postmark date no later than 60 days after the Notice of Pendency was mailed. After the Court issued the Class Notice Order, the Court-appointed administrator, Gilardi, began distributing the Notice of Pendency to potential Class members on September 28, 2023. ECF 344 at 2, ¶¶5-7. Sixty-eight requests to opt-out of the Action were returned. ECF 345 at 1, ¶2.

The Parties also conducted extensive expert discovery on issues including loss causation, damages, accounting, insider trading/stock trading plans, and clothing industry-related practices and processes. In total, the Parties produced 16 expert reports (opening and rebuttal) from eight experts, took eight expert depositions, and produced thousands of pages of expert-related documents.

On October 2, 2023, Defendants moved for summary judgment on all of Lead Plaintiff's claims. ECF 300. Defendants also moved to exclude the testimony of Lead Plaintiff's experts on loss causation/damages, industry practices, and insider trading/stock trading plans. ECFs 309, 314-316. And, Defendants moved to exclude certain opinions offered by Lead Plaintiff's accounting expert. ECFs 313-314, 324.[7] Given that both loss causation and damages are necessary elements of §10(b), if the Court granted Defendants' motion with respect to Lead Plaintiff's expert on these

---

[7]   Lead Plaintiff also moved to exclude certain testimony from Defendants' loss causation/damages and insider trading/stock trading plan expert, and the entirety of the opinion of Defendants' industry expert. ECFs 302, 304-306, 310. Defendants opposed each of these motions. ECFs 328-330.

4893-3488-3020.v2

issues, it may have been case dispositive.  Lead Plaintiff opposed each of these motions.  ECFs 332-335.  After conducting lengthy in-person hearings in February and April 2024, the Court denied in full Defendants' motion for summary judgment and the Parties' motions to exclude the testimony of opposing experts.  *See UA SJ*, 2024 WL 811478, at *21; *see also In re Under Armour Sec. Litig.*, 2024 WL 1635680, at *9 (D. Md. Apr. 16, 2024).  In the months leading up to the July 15, 2024 trial date, and after extensive meet and confer discussions regarding the scope of admissible evidence at trial, the Parties briefed 14 motions *in limine*.  *See*, *e.g.*, ECFs 406-407, 409.  The Court had scheduled a hearing on the remaining motions *in limine* for June 27, 2024.

During the course of the Action, the Parties engaged Judge Phillips, a neutral third-party mediator.  Judge Phillips held all-day, direct settlement discussions with the Parties on four occasions between September 28, 2022 and June 6, 2024, and convened numerous calls with the Parties throughout that period in an ongoing effort to resolve the Action.  On June 20, 2024, in response to a "mediator's recommendation," the Parties reached an agreement to settle the Action for $434,000,000 in addition to certain significant non-monetary Settlement benefits, subject to approval by the Court.

###    C.    Settlement Benefits

This Settlement requires Defendants to pay $434 million into the Escrow Account, which amount comprises the Settlement Fund.  In addition, the Parties have agreed to the following non-monetary Settlement benefits.

###    1.    Separation of Chair and CEO Roles

The Company's Board of Directors first elected to separate the roles of Chair and Chief Executive Officer as of January 1, 2020, and the Company has operated with a separate Chair and

Chief Executive Officer since that time.  The Company shall continue the separation of these roles for at least three years from the date the Judgment becomes Final.

> ### 2.    Compensation

All restricted stock or restricted stock units granted by the Company to its Chief Executive Officer, Chief Financial Officer, and Chief Legal Officer during the period beginning on the date the Judgment becomes Final and ending on the three-year anniversary thereof will include a performance-based vesting condition requiring performance based on achievement of specific financial, stock price (relative or otherwise) or business or strategic performance measures to be set by the Human Capital and Compensation Committee of the Company's Board of Directors.  For the avoidance of doubt, the Human Capital and Compensation Committee retains discretion and authority to also make such performance-based awards subject to additional vesting conditions, including time-based vesting triggers.

## III.    ARGUMENT

> ### A.    The Proposed Settlement Warrants Preliminary Approval

> > #### 1.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate . . . in class actions." *S. C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Boger v. Citrix Sys., Inc.*, 2023 WL 1415625, at *3 (D. Md. Jan. 31, 2023) (Griggsby, J.) ("[C]ourts have recognized that 'there is an overriding public interest in favor of settlement, particularly in class action suits.'"); *Velasquez Monterrosa v. Mi Casita Rests.*, 2017 WL 11829699, at *3 (E.D.N.C. Sept. 26, 2017)

("Courts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citing cases).

District court review of a class action settlement proposal is a two-step process. 4 William B. Rubenstein, *Newberg on Class Actions* §13:12 (6th ed. 2024); *see also In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3 (D. Md. Sept. 10, 2023) (Bennett, J.) ("*Titanium II*") ("'Review of a proposed class action settlement generally involves two hearings.'"). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Newberg on Class Actions* §13:13; Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e) provides that the focus of a court's preliminary approval evaluation is whether notice of the settlement should be provided after considering the likelihood that the court will be able to finally approve the settlement, given the factors enumerated in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)     class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

- 12 -

(D)      the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

Overlapping with Rule 23(e)(2)(B) (arm's length negotiation) and Rule 23(e)(2)(C)(i) (adequacy of the settlement based on the costs, risks, and delay of trial and appeal) is the two-level analysis in the Fourth Circuit, *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-60 (4th Cir. 1991), which "includes an assessment of both the procedural fairness of the settlement negotiations and the substantive adequacy of the settlement itself." *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015).   The procedural fairness factor ensures "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59.  The substantive adequacy analysis, on the other hand, "'weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *NeuStar*, 2015 WL 5674798, at *11.  As discussed below, the proposed Settlement for $434 million in cash, plus the non-monetary Settlement benefits, easily satisfy each of the factors identified under Rule 23(e)(2), as well as the Fourth Circuit's "fairness" and "adequacy" analysis, such that notice of the proposed Settlement should be sent to the Class.

## B.    The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2)

### 1.    Lead Plaintiff and Lead Counsel Zealously Represented the Class

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Neustar*, 2015 WL 5674798, at *4.

- 13 -

In appointing Lead Plaintiff and Lead Counsel to their positions, the Court found that each were adequate under the PSLRA to lead the Action. *See* ECF 13. Moreover, in 2022, the Court granted class certification and certified NESPF to serve as a Class Representative and Robbins Geller to serve as Class Counsel. *See UA Class Cert*, 631 F. Supp. 3d at 308-10. Lead Plaintiff has been an active and informed participant in the litigation and was consulted on, and approved, the terms of the Settlement.

Likewise, given that it has vigorously litigated this case through three motions to dismiss, a motion for an indicative ruling and to reopen the judgment, a motion for class certification, a motion for summary judgment, motions to exclude (in whole or in part) all of Lead Plaintiff's experts, the review and analysis of more than 3 million pages of documents, and 42 fact witness depositions, it goes without saying that Lead Counsel developed a deep understanding of the facts and merits of the case. *See 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) ("*Banner Life*") (affirming this Court's approval of a class action settlement and noting that "[a]s the district court summarized at the preliminary approval hearing, '[t]he settlement was reached after an extensive motions practice, extensive discovery and investigation . . . by Plaintiffs' counsel and multiple settlement discussions and negotiations'") (second and third alteration in original).

The most important aspect of Lead Counsel's representation is the result achieved, and here, Lead Counsel evaluated the potential damages in the case and negotiated vigorously – throughout four full mediation sessions and numerous calls with the mediator spread out between 2022 and 2024 – to secure the $434,000,000 recovery (in addition to the non-monetary benefits). The Settlement is the second largest settlement ever achieved in a securities class action in this District and in the Fourth Circuit. Validating the Court's ruling at the lead plaintiff hearing and class certification stage, Lead Plaintiff and Lead Counsel have adequately represented the Class.

- 14 -

> 2.    **The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

In weighing a class action settlement, the Court also considers whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Similarly, under the *Jiffy Lube* fairness factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "'(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [securities] class actions litigation.'"  *In re Tyson Foods, Inc.*, 2010 WL 1924012, at *2 (D. Md. May 11, 2010) (Bennett, J.) (quoting *Jiffy Lube*, 927 F.2d at 159).  Consideration of all of these factors demonstrates that the Settlement here was reached through arm's-length negotiations after vigorous litigation and with no hint of collusion.

In particular, the advanced posture of this case, *e.g.*, the Parties were 24 days away from trial when they reached an agreement (after the fourth full-day mediation had failed to result in a settlement), and in response to a mediator's recommendation, dispels any concerns of possible collusion.  *See Dickman v. Banner Life Ins. Co.*, 2020 WL 13094954, at *1 (D. Md. May 20, 2020) (Bennett, J.) (approving settlement where "Plaintiffs and Defendants advise[d] that they have reached the Proposed Settlement ***only after years of vigorous prosecution and defense of the alleged claims, including full discovery***, followed by many months of extensive arm's-length negotiations between Co-Lead Class Counsel and Defendants' Counsel under the auspices of [a] highly regarded mediator"), *aff'd by Banner Life*, 28 F.4th at 525-26; *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 767 (D. Md. 2022) (Bredar, J.) ("The posture of the case and the extent of discovery weigh in favor of this finding: ***the case was vigorously litigated by the parties, and settled only after extensive discovery was completed, summary judgment motions were largely***

- 15 -

*denied, and trial was set*.  Further, settlement occurred only with the help of neutral mediators, and only after multiple attempts.").  Indeed, the Parties had completed all fact and expert discovery and prepared the case for trial.  *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484-85 (4th Cir. 2020) (upholding settlement as fair where parties had litigated dispositive motions, "conducted significant discovery by deposing thirteen witnesses and reviewing vast quantities of documents," "engaged in arm's length negotiations and participated in several mediations," and were represented by counsel with "extensive experience in complex civil litigation").

The lengthy settlement negotiations here were conducted at arm's length by experienced class action litigators with the assistance of a highly respected and experienced mediator, former United States District Judge, Layn Phillips.  On September 28, 2022, November 1, 2022, November 10, 2023 and June 6, 2024, the Parties participated in full-day mediation sessions with Judge Phillips, one of the preeminent mediators for complex litigation.  *See Tyson Foods*, 2010 WL 1924012, at *2 ("The extensive record in this case shows that the proposed settlement is fair.  ***First, it was reached at a fairly advanced stage of the proceedings through non-collusive, arm's-length negotiations***.  Second, there has been extensive discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case.  ***Third, the parties' negotiations were adversarial, as they took place while the parties were actively litigating the case***."); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2024 WL 1341122, at *9 (D.S.C. Mar. 29, 2024) ("[S]ettlement only occurred with the help of a court-appointed mediator, Judge Layn Phillips (Ret.), and only after years of negotiation.").

At the first mediation session, the Parties provided to Judge Phillips detailed mediation statements and exhibits, which addressed issues of both liability and damages.  Before, during, and

- 16 -

4893-3488-3020.v2

after the mediation sessions, counsel for both Parties vigorously negotiated on behalf of their clients. Indeed, the Settlement was only reached after Judge Phillips presented the Parties with a "mediator's recommendation" on June 15, 2024.

Lead Counsel, who are very experienced in prosecuting complex class actions, ECF 197-4 (firm biography), had a clear view of the strengths, weaknesses, and risks of its case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) ("[I]t is 'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole,' and to find that the proposed partial settlement is fair."); *Phillips v. Triad Guaranty, Inc.*, 2016 WL 1175152, at *3 (M.D.N.C. Mar. 23, 2016) (citing *MicroStrategy* 148 F. Supp. 2d at 665, and holding that the experience of counsel in securities class action litigation and complex class action litigation were factors that supported a finding of fairness). Moreover, Lead Plaintiff NESPF actively supervised this litigation and recommended that the Settlement be approved.

These factors strongly favor preliminary approval.

### 3. The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval

The proposed Settlement readily satisfies Rule 23(e)(2)(C). In determining whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement.[8] *See, e.g.*, *Boyd v. Coventry*

---

[8] Likewise, the Settlement satisfies the Fourth Circuit's substantive adequacy analysis. Here, the Court considers the following largely overlapping factors:

- 17 -

*Health Care*, 299 F.R.D. 451, 460 (D. Md. 2014) (Chasanow, J.) ("The purpose of the adequacy analysis is to 'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'"); *Titanium II*, 2013 WL 5182093, at *4 (same).  The $434 million Settlement is more than 1,700% the amount of the median securities class action recovery in the Fourth Circuit over the last ten years (from 2014 to 2023).  *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2023 Review & Analysis* (Cornerstone Research 2024) at 20.  It is objectively a superb result for the Class, especially when considered in light of the additional non-monetary benefits obtained.  In light of the risks of potential outcomes at trial (which was less than a month away) – including the risk that even if a jury returned a favorable verdict, Defendants would appeal – Lead Plaintiff believes that the Settlement falls well within the range of possible approval.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 412-13 (7th Cir. 2015) (reversing and remanding securities class action for a new trial after a jury trial).  While Lead Plaintiff firmly believes that the claims were strong and that substantial evidence supported the allegations, it nonetheless recognizes that there were significant risks to establishing both liability and damages at trial – especially where a unanimous verdict would be required.

The fact that this litigation was on the verge of a jury trial did not lessen the risks faced by Lead Plaintiff and the Class.  *See, e.g.*, *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at *1 (N.D. Cal. June 14, 2023) (even though plaintiffs were granted summary judgment on certain elements, the

---

(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*NeuStar*, 2015 WL 5674798, at *11 (quoting *Jiffy Lube*, 927 F.2d at 159).  These factors weigh heavily in favor of finding the proposed Settlement adequate.

4893-3488-3020.v2

jury awarded a verdict for defendants on all counts). As Defendants did at both the motion to dismiss and summary judgment phases, there was no doubt that at trial they would forcefully argue that there was never a legal obligation to disclose the Company's use of pull-forwards during the Class Period. Defendants would have renewed their argument that the pull-forwards were real sales to real customers and that many of the alleged misstatements were too amorphous and vague to be misleading. Moreover, Defendants would have contended that the decline in demand for Under Armour's products was known to the market prior to the close of the Class Period (just as they did in their summary judgment motion), and therefore the jury should find that the truth was in the market. Further, Defendants would have claimed that their pull-forward practice was not illegal or in violation of GAAP, and therefore, Defendants did not act with scienter in failing to disclose this practice to investors. This argument dovetails with another argument Defendants could raise at trial that Under Armour and Plank could not have acted with scienter given the fact that the Company, for at least the first part of the Class Period, was still achieving impressive revenue growth targets even if one removed the financial impact of the pull-forwards. Defendants would have also argued to the jury that defendant Plank's stock sales were made pursuant to a prearranged trading plan and therefore, could not be indicative of scienter.

As to the elements of loss causation and damages, Defendants would no doubt have attacked the findings of Lead Plaintiff's expert at trial just as they did at summary judgment. If jurors were to agree that Lead Plaintiff's loss causation and damages expert's analysis did not sufficiently establish those two elements, then Defendants would almost certainly have received a verdict in their favor. The jury could also have found that Lead Plaintiff had met its loss causation and damages burden, but awarded an amount of damages that was significantly lower than $434,000,000. Indeed,

Defendants' damages expert opined that Lead Plaintiff would not be able to prove **any** damages due to various purported flaws in Lead Plaintiff's expert's methodology.

Even prevailing at trial would not have guaranteed a recovery larger than the $434,000,000 Settlement.  *See Glickenhaus*, 787 F.3d at 412-13; *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd on other grounds*, 688 F.3d 713 (11th Cir. 2012).[9]

The Settlement avoids the potential impact of each of these challenges and other risks and achieves a very favorable and certain result for the Class.  *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256-57 (E.D. Va. 2009) ("It goes without much debate that any future proceedings leading up to, and including trial would be just as antagonistic and expensive, and lengthy post-trial motions likely would be filed.") (citing cases).  The fact that the Settlement eliminates substantial delay and expense strongly weighs in favor of preliminary approval.  *See In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626, at *11 (E.D. Va. Sept. 13, 2022) ("*Capital One*") ("The substantial costs, risk, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.").

In sum, the proposed Settlement satisfies Rule 23(e)(2)(C)(i) and the Fourth Circuit's substantive adequacy analysis set forth in *Jiffy Lube*, 927 F.2d at 159.

---

[9]   Even if Lead Plaintiff was successful at trial, the judgment would not have included any non-monetary benefits, since those are not part of any prayers for relief in the TAC.  Therefore, their inclusion in the Settlement makes this resolution all the more beneficial to the Class.

- 20 -

4.      **The Settlement Satisfies the Remaining Rule 23(e)(2) Factors**

        a.      **The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims**

The Net Settlement Fund, like the vast majority of securities class action settlements, will be distributed to Authorized Claimants with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ well-tested protocols and procedures for the processing of claims.  Namely, a potential class member will submit, either by mail or online, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund.  *See* Settlement Agreement, ¶5.7.  Lead Plaintiff's claims, and those of its co-Class Representatives, will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any deficiencies or contest the rejection of their claims.  Any claim disputes that cannot be resolved will be presented to the Court for a final determination.  After the Settlement reaches its Effective Date (*id.*, ¶7.1) and the claims process is completed, Authorized Claimants will be issued payments.  If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a subsequent distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, Tax Expenses, and unpaid Notice and Administration Costs).  Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Thereafter, any *de minimis* residual will be donated to an appropriate

- 21 -

non-profit organization designated by Lead Counsel and which has no affiliation with Lead Counsel. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

### b.     Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Lead Counsel intends to seek an award of attorneys' fees in an amount not to exceed 25.83% of the Settlement Amount and expenses in an amount not to exceed $5 million, plus interest on both amounts.  Lead Counsel's fee request is reasonable in light of the tremendous result achieved and in line with other settlements approved in recent cases in this Circuit and District.  *See, e.g.*, *Dickman*, 2020 WL 13094954, at *5 ("The percentage of the Common Settlement Fund that Class Counsel seeks is within the range of reasonable awards of '15% to 40%' established by this Court."); *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming an award of 43% and noting that "'[c]ourts have allowed attorney compensation ranging from 19 to 45% of the settlement fund created'") (citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)).  Courts in this Circuit and throughout the country routinely award attorneys' fees of 25% to 33.33% of a settlement amount for similar and even higher recoveries.  For instance, this Court awarded 33-1/3% in attorneys' fees from a $163.5 million settlement.  *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (Bennett, J.) ("*Titanium I*"); *see also*, *Spartanburg Reg'l Health Servs. Dist., Inc. v. Hillenbrand Indus., Inc.*, 2006 WL 8446464, at *5 (D.S.C. Aug. 15, 2006) (awarding 25% in attorneys' fees from a $337.5 million cash settlement that, together with the non-cash portion, brought "the total recovery for the class is in excess of $400 million"); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839, 844 (E.D. Va. 2016) (awarding 28% in attorneys' fees from a $219 million settlement).

Accordingly, Rule 23(e)(2)(C)(iii) is satisfied.

- 22 -

### c.    The Parties Have No Other Agreements Besides One Concerning Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties made in connection with the proposed Settlement.  In addition to the Parties' Memorandum of Understanding and the Settlement Agreement, the Parties entered into the Confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement") which provides that Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Class, should the Court allow a second opportunity to request exclusion, exceed a certain agreed-upon threshold.  *See* Settlement Agreement, ¶7.3.

As detailed in the Notice of Pendency, Class members had 60 days from the time of the mailing of the Notice of Pendency to opt-out of the Action.  ECF 293 at 4, ¶8.  After the Court issued the Class Notice Order (ECF 294), the Court-appointed administrator, Gilardi, began distributing the Notice of Pendency to potential Class members on September 28, 2023.  ECF 344 at 2, ¶¶5-7.  Sixty-eight requests to opt-out of the Action were returned.  ECF 345 at 1, ¶2.  Accordingly, no new opportunity to opt out is required.  *See In re Titanium Dioxide Antitrust Litig.*, 2013 WL 12241829, at *2 (D. Md. Sept. 10, 2013) ("The Court finds in the exercise of its discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure, that a second opt-out right is neither necessary or appropriate.  The Court notes that the settling parties are in agreement that a second opt-out opportunity is neither necessary or appropriate.").

As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing opt-outs to leverage a larger individual settlement, to the detriment of the Class.  *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329 (C.D. Cal. 2016) ("[T]he opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'") (quoting *In re HealthSouth*

- 23 -

*Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009)); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016) (same), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 17, 2017).[10] Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. *See In re Lyft Inc. Sec. Litig.*, 2023 WL 2960006, at *2 (N.D. Cal. Mar. 16, 2023) ("To start, the Court finds that there are compelling reasons to seal the opt-out threshold . . . . The request is narrowly tailored because Plaintiff seeks to seal only the number and percentage of shares that would trigger the option to withdraw.").

### 5. Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Class. Rather, all members of the Class, including Lead Plaintiff, will receive a *pro rata* distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. The proposed plan was created by Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theories of damages under the Exchange Act. All Class Members that were allegedly harmed as a result of the alleged misstatements and omissions, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the Plan. Notice at 8-14; *see, e.g.*, *In re Peanut Farmers Antitrust Litig.*, 2021 WL 3174247, at *4 (E.D. Va. July 27, 2021) ("This type of distribution plan is commonly referred to as a *pro rata* distribution plan which has been previously approved by the Court in similar class action litigation. Moreover, the plan does not award additional funds to any

---

[10] *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) ("The opt-out provision . . . allows Walmart to opt out if a certain percentage of class members opt out of the settlement. ***Only the exact threshold, for practical reasons, was kept confidential***.").

one type of plaintiff and ensures fair treatment of each member of the class.  Accordingly, Plaintiffs' *pro rata* distribution method is fair and reasonable.") (citing *MicroStrategy*, 148 F. Supp. 2d at 668).

*        *        *

Each factor identified under Rule 23(e)(2), including the procedural fairness and substantive adequacy of the $434 million recovery, together with the non-monetary benefits, as required by the Fourth Circuit, is satisfied.

### C.        Notice to the Class Should Be Approved

The threshold requirement for the approval of class notice is whether the proposed notice program is reasonably calculated to apprise the class of the proposed settlement and the class members' rights to object.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950).  "The mechanics of the notice process are left to the discretion of the Court, subject only to the broad reasonableness standards imposed by due process."  *Robinson v. Nationstar Mortg. LLC*, 2020 WL 13119703, at *4 (D. Md. Aug. 19, 2020) (Sullivan, M.J.); *see also Beaulieu v. EQ Indus. Servs.*, 2009 WL 2208131, at * 28 (E.D.N.C. Apr. 20, 2009) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'") (alteration in original).

In terms of content, the notice should describe the settlement and class members' rights "'clearly and concisely . . . in plain, easily understood language.'"  *Boger*, 2023 WL 1415625, at *10 (quoting Fed. R. Civ. P. 23(c)(2)(B)).  A long-form notice must also satisfy the requirements set forth in the PSLRA.  *See* 15 U.S.C. §78u-4(a)(7).

The proposed Notice of Proposed Settlement of Class Action (Settlement Agreement, Ex. A-1) ("Notice") more than satisfies these requirements.  The Notice is written in simple language

- 25 -

and includes: (i) basic information about the lawsuit and the definition of the Class; (ii) a description of the benefits provided by the Settlement; (iii) an explanation that any claims against Defendants that could have been litigated in the Action will be released if the Settlement is approved; (iv) the names and contact information for Lead Counsel; (v) an explanation of how Class Members can obtain the Settlement benefits; (vi) an explanation of how Class Members can exercise their right to object to the Settlement; (vii) that Lead Counsel intends to seek an award of attorneys' fees in an amount not to exceed 25.83% of the Settlement Amount and an award of expenses in an amount not to exceed $5 million, plus interest; (viii) the Settlement Hearing date, time, and location; (ix) an explanation of how to submit a notice of appearance for the Settlement Hearing; and (x) the Settlement website and a toll-free number and settlement website where additional information can be obtained.  Thus, the Notice satisfies the content requirements of Rule 23 and the PSLRA.

Additionally, the proposed dissemination program for notice satisfies due process.  *See Eisen*, 417 U.S. at 173 (finding notice program to be "'best notice practicable under the circumstances'" where it includes "'individual notice to all members who can be identified through reasonable effort'").  Notice to the Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund.  Settlement Agreement, ¶¶2.9, 5.3.  Lead Plaintiff proposes a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), the same firm that disseminated the Notice of Pendency, to be retained here subject to the Court's approval.  As outlined in the proposed Notice Order, and similar to the dissemination program approved for the Notice of Pendency, if the Court grants preliminary approval, the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Notice Order) to all Class Members who were mailed the Notice of Pendency.  The Claims Administrator will also again utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees

- 26 -

that purchase securities on behalf of beneficial owners to facilitate the dissemination of the Notice and Claim Form.  In addition, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *Business Wire*.

This combination of individual first-class mailed notice to all potential Class Members who can be identified with reasonable effort and publication of notice in the *WSJ* and over the internet meets all the requirements of Rule 23 and due process.  *See, e.g.*, *Genworth*, 2016 WL 7177515, at *3; *Neustar*, 2015 WL 5674798, at *12.

Accordingly, Lead Plaintiff respectfully submits that the proposed Notice and Summary Notice, and the related procedures, are appropriate and should be approved.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule below for Settlement-related events.  The timing of events is determined by the date the Notice Order is entered and the date scheduled for the Settlement Hearing.  Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date approximately 100 calendar days after entry of the Notice Order, or at the Court's earliest convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Date for commencing the mailing of the Notice and Claim Form to Class Members (the "Notice Date") | 20 calendar days after entry of the Notice Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of objections | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |

- 27 -

| Event | Proposed Timing |
|-------|-----------------|
| Settlement Hearing | At least 100 calendar days after entry of the Notice Order |
| Deadline for submitting Claim Forms | 90 calendar days after the Notice Date |

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the requested relief.  The Parties' agreed-upon form of proposed Notice Order, with exhibits, is attached to the accompanying Motion.

DATED:  July 15, 2024                    Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                        MICHAEL J. DOWD
                                        MARK SOLOMON
                                        THEODORE J. PINTAR
                                        X. JAY ALVAREZ
                                        SAM S. SHELDON
                                        ROBERT R. HENSSLER JR.
                                        MATTHEW I. ALPERT
                                        CHRISTOPHER R. KINNON
                                        T. ALEX B. FOLKERTH


                                              s/ Robert R. Henssler Jr.
                                        ROBERT R. HENSSLER JR.

                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        miked@rgrdlaw.com
                                        marks@rgrdlaw.com
                                        tedp@rgrdlaw.com
                                        jaya@rgrdlaw.com
                                        ssheldon@rgrdlaw.com
                                        bhenssler@rgrdlaw.com
                                        malpert@rgrdlaw.com
                                        ckinnon@rgrdlaw.com
                                        afolkerth@rgrdlaw.com

4893-3488-3020.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY
ELIZABETH A. SHONSON
ANDREW T. REES
LUKE GOVEAS
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
eshonson@rgrdlaw.com
arees@rgrdlaw.com
lgoveas@rgrdlaw.com

*Lead Counsel for Plaintiffs*

MOTLEY RICE LLC
JOSHUA C. LITTLEJOHN
CHRISTOPHER F. MORIARTY
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843/216-9000
843/216-9450 (fax)
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for KBC Asset Management NV*

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for Monroe County
Employees' Retirement System*

- 29 -

SILVERMAN THOMPSON SLUTKIN
  & WHITE LLC
ANDREW C. WHITE, Bar No. 0821
WILLIAM SINCLAIR, Bar No. 28833
PIERCE C. MURPHY, Bar No. 30030
400 E. Pratt Street, Suite 900
Baltimore, MD  21201
Telephone:  410/385-2225
410/547-2432 (fax)
awhite@mdattorney.com
bsinclair@mdattorney.com
pmurphy@mdattorney.com

*Local Counsel*

- 30 -