**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| In re UNDER ARMOUR SECURITIES LITIGATION | ) | Civil No. RDB-17-388 |
| | ) | |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND THE PLAN OF ALLOCATION

4893-6997-8067.v2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     OVERVIEW OF THE ACTION .................................................................................4

      A.      Factual Background ........................................................................................4

      B.      Procedural History .........................................................................................5

III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS ........................................................................................................11

IV.     THE SETTLEMENT SATISFIES RULE 23(e)(2) AND THE FOURTH
      CIRCUIT'S FAIRNESS AND ADEQUACY TESTS .....................................................13

      A.      The Settlement Is Procedurally Fair Under Rule 23(e)(2) and *Jiffy Lube* ............13

            1.      Lead Plaintiff and Its Experienced Counsel Adequately
                 Represented the Class by Litigating the Action Up to Trial .....................13

            2.      The Settlement Was Negotiated over Four Mediations and Several
                 Years at Arm's Length with an Experienced Mediator ...........................15

      B.      The Settlement Is Substantively Adequate Under Rule 23(e) and *Jiffy Lube* ........17

            1.      The Settlement Adequately Reflects the Relative Strength of the
                 Action on the Merits Given the Significant Risks Faced ..........................17

                 a.      Lead Plaintiff Faced Strong Defenses at Trial ...............................18

                 b.      The Settlement Eliminates the Additional Costs of Trial
                      and the Risk of a Lengthy Appeal...................................................20

            2.      Under Armour Is Solvent, but There Could Be Risk of Recovering
                 a Massive Judgment ..................................................................................21

            3.      The Settlement Satisfies the Remaining Rule 23(e)(2) and *Jiffy
                 Lube* Factors..............................................................................................22

                 a.      The Proposed Method of Distributing Relief to the Class Is
                      Effective .........................................................................................22

                 b.      The Proposed Award of Attorneys' Fees Is Reasonable ..............23

c.      The Parties Have No Other Agreements Besides One Concerning Opt-Outs ........................................................23

d.      The Settlement Treats Class Members Equitably ........................24

4.      Class Members Support the Settlement ......................................24

V.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ..........25

VI.     LEAD PLAINTIFF HAS PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS ...............................26

VII.    CONCLUSION ....................................................................................27

4893-6997-8067.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) ................................................................................12, 14, 17

*Aberdeen City Council v. Bloomberg L.P.*,
   688 F. Supp. 3d 169 (S.D.N.Y. 2023).............................................................................8

*Boger v. Citrix Sys., Inc.*,
   2023 WL 3763974 (D. Md. June 1, 2023).....................................................................23

*Boyd v. Coventry Health Care*,
   299 F.R.D. 451 (D. Md. 2014).....................................................................................18

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................................................18

*Cozzarelli v. Inspire Pharms., Inc.*,
   549 F.3d 618 (4th Cir. 2008) .......................................................................................18

*Dickman v. Banner Life Ins. Co.*,
   2020 WL 13094954 (D. Md. May 20, 2020),
   *aff'd, 1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) .......................................................................................16

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).....................................................................................................19

*Feinberg v. T. Rowe Price Grp.*,
   610 F. Supp. 3d 758 (D. Md. 2022) ............................................................................16

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) .....................................................................................24

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .......................................................................................21

*In re BankAtlantic Bancorp, Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
   *aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .....................................................................................21

- iii -

**Page**

*In re Comput. Scis. Corp. Sec. Litig.*,
    2013 WL 12155436 (E.D. Va. Sept. 30, 2013)......................................................................26

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................................... *passim*

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ........................................................................................ *passim*

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod.*
    *Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ........................................................................................ *passim*

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010) .................................................................................20

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................................... *passim*

*In re MicroStrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) ....................................................................................21

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) .............................................................................................25

*In re NeuStar, Inc. Sec. Litig.*,
    2015 WL 5674798 (E.D. Va. Sept. 23, 2015)..................................................................14, 15

*In re Peanut Farmers Antitrust Litig.*,
    2021 WL 3174247 (E.D. Va. July 27, 2021) ....................................................................25, 26

*In re Tesla Inc., Sec. Litig.*,
    2023 WL 4032010 (N.D. Cal. June 14, 2023) .......................................................................19

*In re Tyson Foods, Inc.*,
    2010 WL 1924012 (D. Md. May 11, 2010)........................................................................11, 16

*In re Under Armour Sec. Litig.*,
    2020 WL 363411 (D. Md. Jan. 22, 2020)............................................................................6, 7

*In re Under Armour Sec. Litig.*,
    2021 WL 633373 (D. Md. Feb. 18, 2021) ...............................................................................7

- iv -

**Page**

*In re Under Armour Sec. Litig.*,
   2024 WL 1635680 (D. Md. Apr. 16, 2024) ...........................................................................10

*In re Under Armour Sec. Litig.*,
   2024 WL 811478 (D. Md. Feb. 26, 2024) .................................................................2, 5, 10

*In re Under Armour Sec. Litig.*,
   342 F. Supp. 3d 658 (D. Md. 2018) ....................................................................................6

*In re Under Armour Sec. Litig.*,
   409 F. Supp. 3d 446 (D. Md. 2019) ....................................................................................6

*In re Under Armour Sec. Litig.*,
   540 F. Supp. 3d 513 (D. Md. 2021) .................................................................................5, 8

*In re Under Armour Sec. Litig.*,
   631 F. Supp. 3d 285 (D. Md. 2022) ....................................................................................9

*In re Under Armour Sec. Litig.*,
   815 F. App'x 748 (4th Cir. 2020) ......................................................................................7

*In re Zetia (Ezetimibe) Antitrust Litig.*,
   699 F. Supp. 3d 448 (E.D. Va. 2023) ...............................................................................21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................21

*Skochin v. Genworth Fin., Inc.*,
   2020 WL 6697418 (E.D. Va. Nov. 12, 2020) ..................................................................12

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b) ............................................................................................................4, 7, 10
   §78t(a) ....................................................................................................................4, 7
   §78t-1 ........................................................................................................................4
   §78u-4 ...................................................................................................................3, 7
   §78u-4(a)(4) ............................................................................................................23
   §78u-4(a)(7) ............................................................................................................26

**Page**

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................25, 26
    Rule 23(c)(2)(B) ..................................................................................................26, 27
    Rule 23(e) ....................................................................................................11, 12, 16, 17
    Rule 23(e)(2) ............................................................................................... *passim*
    Rule 23(e)(2)(A) ...........................................................................................12, 13, 14, 15
    Rule 23(e)(2)(B) ...........................................................................................12, 13, 15, 16
    Rule 23(e)(2)(C) ..............................................................................................12, 17
    Rule 23(e)(2)(C)(i) ..................................................................................................18
    Rule 23(e)(2)(C)(ii) .................................................................................................22
    Rule 23(e)(2)(C)(iii) ................................................................................................23
    Rule 23(e)(2)(C)(iv) ................................................................................................23
    Rule 23(e)(2)(D) .....................................................................................................17
    Rule 23(e)(3) ....................................................................................................11, 23

17 C.F.R.
    §240.10b-5…………………………………………………………………………..4, 7

4893-6997-8067.v2

Lead plaintiff Aberdeen City Council as Administrating Authority for the North East Scotland Pension Fund ("NESPF" or "Lead Plaintiff"),[1] on behalf of itself and all other members of the certified Class,[2] respectfully submits this memorandum of law in support of its motion for: (1) final approval of the proposed Settlement reached in the above-captioned class action (the "Action") for $434,000,000 in cash (the "Settlement Amount") and important corporate governance reforms; and (2) approval of the Plan of Allocation. The terms of the proposed Settlement are set forth in the Settlement Agreement, entered into by all Parties to the litigation. ECF 430-3.[3]

## I.   INTRODUCTION

This securities fraud case was dismissed twice – once with prejudice. Fortunately, Lead Plaintiff and Lead Counsel never gave up and never gave in. That determination and tenacity have now paid off for Class Members everywhere. The Settlement for $434,000,000 and certain non-monetary benefits is an extraordinary result. It is the second-largest securities class action settlement ever in the Fourth Circuit, the largest securities settlement in this Circuit in over 17 years, and among the 50 largest settlements ever obtained in a securities fraud class action.[4] And it is *48 times* larger than the SEC's $9,000,000 Under Armour settlement from 2021.[5] Defendants also agreed to

---

[1]     All capitalized terms used and not otherwise defined in this memorandum have the same meanings as in the Settlement Agreement, dated July 12, 2024 (ECF 430-3). Emphasis is added and internal citations are omitted throughout unless otherwise noted.

[2]     The "Class" includes all persons and entities who purchased or otherwise acquired Class A and Class C common stock of Under Armour between September 16, 2015, and November 1, 2019, inclusive (the "Class Period").

[3]     Defendants are Under Armour, Inc. ("Under Armour" or the "Company") and Kevin A. Plank ("Plank") (together, "Defendants," and with Lead Plaintiff, the "Parties").

[4]     As measured by ISS Securities Class Action Services. *See* ECF 430-4 (ISS Securities Class Action Services, *The Top 100 U.S. Class Action Settlements of All Time as of December 31, 2023*).

[5]     *See* Press Release, SEC, *SEC Charges Under Armour Inc. with Disclosure Failures* (May 3, 2021), https://www.sec.gov/news/press-release/2021-78.

4893-6997-8067.v2

separate Under Armour's Board of Directors Chair and Chief Executive Officer positions and to add vesting conditions to certain stock grants.  ECF 430-3 at ¶¶2.3, 2.4.  There can be no question: the Settlement is fair, reasonable, and adequate.

As detailed in the accompanying Declaration of Robert R. Henssler Jr. ("Henssler Decl."), the Settlement came only 25 days before trial, after seven years of hard-fought litigation, which included: (1) two dismissals – one with prejudice (ECF 75, 99); (2) an opposed motion to reopen the litigation following *The Wall Street Journal's* ("*WSJ*") November 3, 2019 article revealing governmental investigations into Under Armour's public statements and accounting practices concerning customer demand and pull-forwards (ECF 150); (3) an opposed motion for a Federal Rule of Civil Procedure ("Rule") 62.1 indicative ruling that brought the litigation back to this Court from a pending appeal to the Fourth Circuit (ECF 140); (4) the defeat of Defendants' motion to dismiss the Consolidated Third Amended Complaint for Violations of the Federal Securities Laws ("TAC") (ECF 153, 174); (5) a successful motion for class certification obtained over Defendants' objections (ECF 246); (6) the defeat of Defendants' motion for summary judgment (ECF 378); and (7) the defeat of Defendants' motions to exclude (in whole or in part) all of Lead Plaintiff's proposed expert trial witnesses.  ECF 389; Henssler Decl., ¶¶6, 15-73.[6]  As a result, Lead Plaintiff and Lead Counsel thoroughly understood the strengths and potential weaknesses of their claims when the Parties reached the Settlement just weeks before trial.

Defendants from the beginning and throughout the litigation vigorously denied liability and asserted strong defenses.  The Settlement followed years-long negotiations with multiple mediations (all while litigation between experienced counsel remained ongoing), facilitated at arm's length by

---

[6]     *See also In re Under Armour Sec. Litig.*, 2024 WL 811478, at *9 (D. Md. Feb. 26, 2024) ("*UA SJ*") (discussing procedural history of the litigation).

4893-6997-8067.v2

the Honorable Layn R. Phillips (ret.) ("Judge Phillips") of Phillips ADR Enterprises, a highly-respected mediator with extensive experience in complex securities litigation. Lead Counsel made clear that it would continue to litigate – and did continue to litigate – instead of settling for anything other than a massive recovery. Indeed, Lead Counsel litigated for almost two more years after the first mediation until it achieved the Settlement.

Lead Counsel has concluded that the Settlement is an excellent result based on all relevant factors, including, *inter alia*: (a) the substantial risk, expense, and uncertainty in continuing the Action through trial and likely post-trial motions and appeals; (b) the relative strengths and weaknesses of the claims and defenses asserted; (c) Lead Counsel's full analysis of the evidence obtained and the legal and factual issues presented; (d) Lead Counsel's experience litigating and trying securities class actions similar to the Action; and (e) the extensive disputes concerning the merits and damages, as developed through the litigation and lengthy arm's length mediation. Lead Plaintiff and class representatives Monroe County Employees' Retirement System ("Monroe County") and KBC Asset Management ("KBC") are the sophisticated institutional investors that the PSLRA favors, and they fully support the Settlement.

Lead Plaintiff also asks the Court to approve the Plan of Allocation, which was sent to Class Members in the Notice. The Plan of Allocation governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation was developed with the assistance of Lead Plaintiff's damages expert and tracks Lead Plaintiff's damages models, taking into account shares held, purchased, acquired, and sold. The Plan of Allocation distributes the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

4893-6997-8067.v2

The Class's reaction to date also supports the Settlement and Plan of Allocation. Pursuant to this Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF 434) (the "Preliminary Approval Order"), as of October 2, 2024, a total of 469,400 copies of the Notice and Proof of Claim ("Notice Package") were sent to potential Class Members and nominees, and notice was published in the *WSJ* and transmitted over *Business Wire*. *See* Declaration of Ross D. Murray Regarding Notice Dissemination and Publication, ¶¶11-12 (the "Murray Decl."), attached as Ex. D to the Henssler Decl. Although the October 17, 2024, deadline to object to the Settlement and Plan of Allocation has not yet passed, to date no objections have been received.[7]

Accordingly, the Settlement of this complex securities fraud action for $434,000,000 plus important non-monetary benefits, and the related Plan of Allocation to distribute it, are fair, reasonable, and more than adequate – a superb result for the Class.

## II.   OVERVIEW OF THE ACTION

This Court is familiar with the Action and has granted preliminary approval to the Settlement. ECF 434. In its rulings on Defendants' successive motions to dismiss and motion for summary judgment, the Court has summarized the underlying factual background and procedural history, which Lead Plaintiff restates briefly below and more fully in the accompanying Henssler Declaration. *See, e.g.*, ECF 173 at 2-5; ECF 378 at 1-2, 4-5, 9-18.

### A.   Factual Background

In summary, Lead Plaintiff alleged that during the September 16, 2015, to November 1, 2019 Class Period, Defendants made materially false or misleading statements that violated §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, causing the price of Under Armour stock to trade at artificially inflated

---

[7]      Lead Counsel will address any subsequent objections in its reply papers.

prices.  Specifically, Lead Plaintiff alleged that Defendants misled investors that "consumer demand for the company's products was strong between the third quarter of 2015 and the fourth quarter of 2016" and that "Under Armour's 26-consecutive quarter 20% year-over-year revenue growth streak was 'safely intact,' when in reality demand for the company's products was in decline."  *In re Under Armour Sec. Litig.*, 540 F. Supp. 3d 513, 517 (D. Md. 2021) ("*UA III*").  Lead Plaintiff also alleged "that Defendants manipulated the company's financial results by pulling sales forward from future quarters and engaged in other allegedly suspect sales practices."  *Id.*  Lead Plaintiff further alleged that "the 'truth regarding [Under Armour]'s operational and financial condition' slowly leaked out 'in a series of partial disclosures that resulted in statistically significant stock price declines and investor losses as the artificial inflation in the Company's stock price dissipated.'"  *UA SJ*, 2024 WL 811478, at *8 (alteration in original).

### B.   Procedural History

On February 10, 2017, Brian Breece filed a class action complaint against Under Armour, Plank, and the Company's former Chief Financial Officer ("CFO"), Lawrence Molloy ("Molloy"). ECF 1.  The Court consolidated all related cases on March 23, 2017, and re-captioned the Action as *In re Under Armour Sec. Litig.*, No. RDB-17-388.  ECF 3.  On April 26, 2017, the Court appointed NESPF as lead plaintiff and approved NESPF's selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel and Silverman Thompson Slutkin & White, LLC as local counsel.  ECF 13.

Lead Plaintiff filed the [Corrected] Consolidated Amended Complaint for Violations of the Federal Securities Laws ("CAC") on August 9, 2017.  ECF 30.  The CAC asserted claims on behalf of all persons who purchased or otherwise acquired Under Armour's publicly traded securities between September 16, 2015 and January 30, 2017, inclusive.  *Id.*, ¶2.  The CAC named as

defendants Under Armour, Plank, Molloy, former Under Armour CFO Brad Dickerson, members of the Company's Board of Directors, and various underwriters. All defendants named in the CAC thereafter moved to dismiss on November 9, 2017 (ECF 51-52). Lead Plaintiff opposed the motion (ECF 55-56), which the Court granted on September 19, 2018. *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 694 (D. Md. 2018) ("*UA I*").

Lead Plaintiff filed the Consolidated Second Amended Complaint for Violations of the Federal Securities Laws ("SAC") on November 16, 2018. ECF 78. The SAC named Under Armour and Plank as defendants, who moved to dismiss the SAC on January 17, 2019 (ECF 80). Lead Plaintiff opposed the motion (ECF 86), but the Court dismissed the SAC with prejudice on August 19, 2019. *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 463 (D. Md. 2019) ("*UA II*").

Lead Plaintiff filed a notice of appeal with the Fourth Circuit on September 17, 2019. ECF 102, 104. On November 3, 2019 – two days before Lead Plaintiff's opening appellate brief was due – the *WSJ* published an article titled "'Under Armour is Subject of Federal Accounting Probe,'" which reported that "'[f]ederal law-enforcement officials are investigating Under Armour Inc.'s accounting practices in a probe examining whether the sportswear maker shifted sales from quarter to quarter to appear healthier, according to people familiar with the matter.'" *In re Under Armour Sec. Litig.*, 2020 WL 363411, at *5 (D. Md. Jan. 22, 2020) ("*UA Indicative Ruling*"). The next day, Under Armour filed with the SEC a Form 8-K stating that it confirmed to the *WSJ* "'that it has been responding to requests for documents and information from the SEC and DOJ regarding certain of the Company's accounting practices and related disclosures, beginning with submissions to the SEC in July 2017.'" *Id.*

On November 6, 2019, following the revelation of the SEC and DOJ investigations, Kirtan Patel filed a putative securities class action complaint against Under Armour, Plank, Molloy, Frisk,

and Bergman for violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of all persons or entities who purchased or otherwise acquired Under Armour securities between August 3, 2016 and November 1, 2019 ("*Patel* Action").  *See Patel v. Under Armour, Inc.*, No. 1:19-cv-03209-RDB (D. Md.).

On November 18, 2019, Lead Plaintiff NESPF filed its Motion to Consolidate and Vacate Notice and Lead Plaintiff Deadline – a motion opposed by both the plaintiff in the *Patel* Action and Defendants.  ECF 107, 115, 120.  Also on November 18, 2019, Lead Plaintiff separately filed its: (a) Request for an Indicative Ruling Under Fed. R. Civ. P. 62.1 (ECF 105) ("Rule 62.1 Motion"); and (b) Motion for Relief from the Court's September 9, 2019 Judgment Pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b) Motion") (ECF 106).  Defendants vigorously opposed both motions.  ECF 119, 121.  After conducting a hearing, the Court granted Lead Plaintiff's Rule 62.1 Motion on January 22, 2020.  *See UA Indicative Ruling*, 2020 WL 363411, at *9.

On August 13, 2020, the Fourth Circuit remanded the Action back to this Court.  *See In re Under Armour Sec. Litig.*, 815 F. App'x 748, 749 (4th Cir. 2020).

On September 14, 2020, the Court granted NESPF's Rule 60(b) Motion and appointed NESPF to continue to serve as lead plaintiff in the newly consolidated action and Robbins Geller to serve as lead counsel.  ECF 150.

On October 14, 2020, Lead Plaintiff filed the TAC.  ECF 153.  While the motion to dismiss briefing was pending, Lead Plaintiff moved to partially lift the PSLRA discovery stay to seek the production of documents Under Armour reviewed and produced to the SEC (ECF 156) – a motion that Defendants opposed.  ECF 160.  After conducting a hearing, the Court denied Lead Plaintiff's motion to partially lift the discovery stay on February 18, 2021.  *See In re Under Armour Sec. Litig.*,

2021 WL 633373, at *4 (D. Md. Feb. 18, 2021).  Several months later, on May 18, 2021, the Court denied Defendants' motion to dismiss the TAC in full.  *See UA III*, 540 F. Supp. 3d at 524.

Defendants answered the TAC on July 23, 2021 (ECF 185), and the Parties began formal fact discovery.  Discovery was hard-fought: the Parties held extensive discussions regarding the method and form of both Parties' document productions, including lengthy negotiations over which search terms and custodians to apply for collecting documents, and briefed Lead Plaintiff's motion to compel documents related to the Company's public disclosures over which Defendants asserted attorney work-product protection.  *See* ECF 264, 271, 284.  Lead Plaintiff also moved to compel documents from Bloomberg L.P. ("Bloomberg"), seeking relevant communications and documents sent or received by its former reporter in connection with a January 2016 analyst report from Morgan Stanley that was critical of Under Armour's financial health and performance.  Bloomberg zealously opposed Lead Plaintiff's motion, and a court in the Southern District of New York denied the motion to compel.  *See Aberdeen City Council v. Bloomberg L.P.*, 688 F. Supp. 3d 169, 174, 184 (S.D.N.Y. 2023).

Ultimately, Defendants produced – and Lead Counsel analyzed and reviewed – more than 300,000 documents (exceeding 1.3 million pages) from nearly 50 custodians.  After subpoenaing more than 60 third parties – together with the third parties subpoenaed by Defendants – Lead Counsel reviewed more than 250,000 additional documents, totaling more than 2 million pages.  Lead Counsel also took 42 fact witness depositions, and the Parties exchanged hundreds of pages of admissions and sworn interrogatory responses.  Lead Plaintiff NESPF, along with fellow Class Representatives Monroe County and KBC, produced tens of thousands of pages of documents, sat for depositions, and provided responses to document requests and interrogatories.

On September 29, 2022, after extensive briefing, the Court certified a class of all persons and entities who purchased or otherwise acquired Class A and Class C common stock of Under Armour during the September 16, 2015, through November 1, 2019 Class Period.  *See In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 313 (D. Md. 2022) ("*UA Class Cert*").  The Court appointed NESPF, Monroe County, and KBC as Class Representatives and appointed Robbins Geller as Class Counsel.

On August 24, 2023, the Court issued its Order Granting Class Representatives' Uncontested Motion for Entry of an Order Approving Notice of Pendency of Class Action, Notice Procedures, and Appointment of Notice Administrator (the "Class Notice Order") (ECF 294), which required any persons or entities wishing to exclude themselves from the Class do so with a postmark date no later than 60 days after the Notice of Pendency was mailed.  After the Court issued the Class Notice Order, the Court-appointed administrator, Gilardi, began distributing the Notice of Pendency to potential Class Members on September 28, 2023.  ECF 344, ¶¶5-7.  Only 68 requests to opt-out of the Action were returned.  ECF 345, ¶2.

The Parties also conducted extensive expert discovery on issues, including loss causation, damages, accounting, insider trading/stock trading plans, and clothing industry-related practices and processes.  In total, the Parties produced 16 expert reports (opening and rebuttal) from eight experts, took eight expert depositions, and produced thousands of pages of expert-related documents.

On October 2, 2023, Defendants moved for summary judgment on all of Lead Plaintiff's claims.  ECF 299.  Defendants also moved to exclude the testimony of Lead Plaintiff's experts on loss causation/damages, industry practices, and insider trading/stock trading plans.  ECF 309, 314-316.  Defendants further moved to exclude certain opinions offered by Lead Plaintiff's accounting

- 9 -

expert.  ECF 313-314, 324.[8]  Because loss causation and damages are necessary elements of §10(b)

of the Exchange Act, had the Court granted Defendants' motion to exclude Lead Plaintiff's expert on

these issues, it may have ended the case.  Lead Plaintiff opposed each of these motions.  ECF 332-

335.  After conducting lengthy in-person hearings in February and April 2024, the Court denied in

full Defendants' motion for summary judgment and the Parties' motions to exclude the testimony of

opposing experts.  *See UA SJ*, 2024 WL 811478, at \*21; *see also In re Under Armour Sec. Litig.*,

2024 WL 1635680, at \*9 (D. Md. Apr. 16, 2024).  In the months before the July 15, 2024 trial date,

and after extensive meet and confer discussions regarding the scope of admissible evidence at trial,

the Parties briefed 14 motions *in limine*.  *See, e.g.*, ECF 406-407, 409.  The Court had scheduled a

hearing on the remaining motions *in limine* for June 27, 2024.

      While still litigating the Action, the Parties engaged Judge Phillips, a neutral third-party

mediator.  Judge Phillips held all-day, direct settlement discussions with the Parties on four

occasions between September 28, 2022 and June 6, 2024, and convened numerous calls with the

Parties throughout that period in attempting to resolve the Action.  On June 20, 2024, in response to

a "mediator's recommendation," the Parties reached an agreement to settle the Action for

$434,000,000 plus significant non-monetary benefits, subject to the Court's approval.

      On July 15, 2024, Lead Plaintiff moved for preliminary approval of the Settlement.  ECF

430.  The Court heard oral argument on July 22, 2024, and granted Lead Plaintiff's motion for

preliminary approval of the Settlement the same day.  ECF 433, 434.  Notice was sent to the Class

beginning on August 12, 2024.  *See* Murray Decl., ¶¶5-8.

---

[8]      Lead Plaintiff also moved to exclude certain testimony from Defendants' loss
causation/damages expert and insider trading/stock trading plan expert, and the entirety of
Defendants' industry expert's opinion.  ECF 302, 304-306, 310.  Defendants opposed each of these
motions.  ECF 328-330.

## III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

Parties must seek approval to settle a class action from the district court, which acts to protect the class members by ensuring their due process rights "have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020); Fed. R. Civ. P. 23(e).   "The United States Court of Appeals for the Fourth Circuit has held that a class action settlement should be approved if it is both 'fair' and 'adequate.'" *In re Tyson Foods, Inc.*, 2010 WL 1924012, at *2 (D. Md. May 11, 2010) (J. Bennett) (granting final approval) (quoting *Jiffy Lube*, 927 F.2d at 158-59); Fed. R. Civ. P. 23(e).   In assessing the fairness and adequacy of a settlement, courts maintain a "'strong initial presumption that the compromise is fair and reasonable.'" *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).   The trial court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision," and it is granted "considerable deference" in approving a settlement.   *See Jiffy Lube*, 927 F.2d at 158; *Lumber Liquidators*, 952 F.3d at 484 (holding the district court "'is on the firing line'" and thus in best position to "'evaluate the action'").

Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a settlement as "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

- 11 -

"In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, 2020 WL 6697418, at *2 (E.D. Va. Nov. 12, 2020).   In evaluating a settlement's procedural fairness, courts in the Fourth Circuit also consider the following factors that largely overlap with Rule 23(e)(2)(A) and (B): "'(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation.'" *Lumber Liquidators*, 952 F.3d at 484 (alteration in original) (quoting *Jiffy Lube*, 927 F.2d at 159).   Concerning a settlement's substantive adequacy, Fourth Circuit courts also consider the following factors that largely overlap with Rule 23(e)(2)(C):

> "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement."

*Lumber Liquidators*, 952 F.3d at 484 (quoting *Jiffy Lube*) (alteration in original).

Courts are not required to provide "an estimate" of what the class members would have received had they prevailed at trial, "'decide the merits of the case,'" nor "'substitute its judgment of what the case might be worth for that of class counsel.'" *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022).   The court need only "'satisfy itself that the class settlement is within the "ballpark" of reasonableness.'"   *Id*.

This Court's Preliminary Approval Order considered the Rule 23(e) factors when assessing the Settlement, finding it fair, reasonable, and adequate, subject to further consideration at the Settlement Hearing.   ECF 434.   Lead Plaintiff respectfully submits that nothing has changed since then: the proposed $434,000,000 Settlement, including the corporate governance reforms, more than

- 12 -

satisfies Rule 23(e)(2) and the relevant Fourth Circuit factors, and thus warrants final approval as fair, reasonable, and adequate.

## IV.    THE SETTLEMENT SATISFIES RULE 23(e)(2) AND THE FOURTH CIRCUIT'S FAIRNESS AND ADEQUACY TESTS

### A.    The Settlement Is Procedurally Fair Under Rule 23(e)(2) and *Jiffy Lube*

Rule 23(e)(2)(A) and (B) and the first part of the Fourth Circuit's *Jiffy Lube* analysis address the Class's representation in determining procedural fairness. *See* Fed. R. Civ. P. 23(e)(2)(A)(B) (courts must consider "[whether] the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length"); *Lumber Liquidators*, 952 F.3d at 484 (courts must consider "'(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation'") (alteration in original). These factors weigh heavily in favor of a finding that the Settlement is fair.

### 1.    Lead Plaintiff and Its Experienced Counsel Adequately Represented the Class by Litigating the Action Up to Trial

Lead Plaintiff's dogged representation of the Class right up to trial amply satisfies Rule 23(e)(2)(A)'s adequate representation requirement and the first and second *Jiffy Lube* fairness factors. Lead Plaintiff and Lead Counsel relentlessly prosecuted this case for over seven years: opposing three motions to dismiss, moving for an indicative ruling and to reopen the judgment, completing extensive discovery (taking over 40 fact depositions and reviewing and analyzing over 3 million pages of documents), moving to certify the class successfully, hiring numerous experts and successfully opposing Defendants' motions to exclude them all, successfully opposing Defendants' motion for summary judgment, briefing numerous motions *in limine*, and completing substantial trial

- 13 -

preparation (*e.g.*, identifying trial witnesses, designating deposition clips, and selecting trial exhibits). *See* Henssler Decl., ¶¶15-81.

Such extensive litigation and the advanced posture of the case demonstrate that Lead Plaintiff and Lead Counsel have adequately represented the Class under Rule 23(e)(2)(A) and show procedural fairness under *Jiffy Lube*. *See In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (advanced posture of case "dispel[s] any wariness of 'possible collusion among the settling parties'") (quoting *Jiffy Lube*, 927 F.2d at 159); *see also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 840 (E.D. Va. 2016) (finding Rule 23(e)(2)(A) satisfied when "the parties had fully briefed the defendants' motion to dismiss, completed discovery, moved and argued for class certification, hired experts on complex factual issues, fully briefed partial summary judgment motions, briefed motions *in limine*, and completed trial deposition and exhibit designations"); *Banner Life*, 28 F.4th at 525 (upholding as fair a settlement "reached after an extensive motions practice [and] extensive discovery").[9]

Furthermore, Lead Plaintiffs' interest is aligned with the Class's, supporting a finding of fairness. Lead Plaintiff's vigorous prosecution of this hotly-contested case for seven years shows that its interests were not antagonistic but rather clearly aligned with the Class's. *See Neustar*, 2015 WL 5674798, at *4 (Rule 23(e)(2)(A) satisfied when "named plaintiff does not have interests antagonistic to those of the class"); *accord* ECF 245 at 26 (finding Lead Plaintiff and Class Counsel adequate and stating that "this Court is satisfied that the representatives' interests are in alignment with the proposed class").

---

[9]     Not only is the Settlement Amount extraordinary, but Lead Counsel also obtained corporate governance changes at Under Armour and ensured the Settlement was immediately funded. As of the date of this memorandum, the fund has earned over $3,563,070 in interest.

Moreover, the successful litigation and extraordinary result testify to Lead Counsel's skill and experience in prosecuting complex securities class actions – further supporting the adequacy of representation factor under Rule 23(e)(2)(A) and satisfying the Fourth Circuit *Jiffy Lube* procedural fairness test. *See Neustar*, 2015 WL 5674798, at *4 (Rule 23(e)(2)(A) is met when "plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation'"); *Lumber Liquidators*, 952 F.3d at 484 (courts must consider "'the experience of counsel in the area of [the] class action litigation'") (alteration in original). Lead Counsel's expertise and acumen in litigating complex securities cases like this one is well established and demonstrated by the remarkable recovery obtained here. *See* ECF 197-4 (firm biography).

Indeed, the extent of litigation required to reach this Action's advanced stage, combined with Lead Counsel's experience, provided Lead Counsel an unparalleled view of the Action's strengths, weaknesses, and risks – warranting deference to Lead Counsel's informed decision to favor the Settlement. *See MicroStrategy*, 148 F. Supp. 2d at 665 ("[I]t is 'appropriate for the court to give significant weight to the judgment of class counsel that the proposed settlement is in the interest of their clients and the class as a whole,' and to find that the proposed partial settlement is fair."). In addition, Lead Plaintiff actively supervised this litigation and fully supports the Settlement, which also demonstrates its fairness. *See Neustar*, 2015 WL 8484438, at *4 (opinions of institutional plaintiff further supported the settlement's fairness); *see generally* Declaration of Graham Buntain in Support of Final Approval of Plaintiffs' Proposed Class Action Settlement on behalf of NESPF ("NESPF Decl."), attached as Ex. A to the Henssler Decl.

### 2. The Settlement Was Negotiated over Four Mediations and Several Years at Arm's Length with an Experienced Mediator

The Settlement easily satisfies the second Rule 23(e)(2)(B) factor, whether "the proposal was negotiated at arm's length," and the third *Jiffy Lube* factor, which considers "the circumstances

- 15 -

surrounding the negotiations." Fed R. Civ. P. 23(e)(2)(B); *Lumber Liquidators*, 952 F.3d at 484. The Settlement negotiations were conducted over several years at arm's length by experienced class action litigators, facilitated by a highly respected and experienced mediator, former United States District Judge, Layn Phillips. *See* ECF 430-1 at 16-17. These negotiations included detailed mediation statements and exhibits, and addressed both liability and damages, with counsel for both Parties negotiating on behalf of their clients while simultaneously litigating the case. *Id.* In fact, the Settlement was only reached after Judge Phillips presented the Parties with a "mediator's recommendation" on June 15, 2024. *Id.* at 17.

This arm's-length negotiation by experienced adversaries also supports the fairness of the Settlement. *See Lumber Liquidators*, 952 F.3d at 484-85 (upholding a settlement as fair where parties "engaged in arm's length negotiations and participated in several mediations"); *see also Tyson Foods*, 2010 WL 1924012, at *2 (finding a settlement fair when "it was reached at a fairly advanced stage of the proceedings through non-collusive, arm's-length negotiations" and "the parties' negotiations were adversarial, as they took place while the parties were actively litigating the case"); *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 767 (D. Md. 2022) (Bredar, J.) (finding a settlement fair when it "occurred only with the help of neutral mediators, and only after multiple attempts"); *Dickman v. Banner Life Ins. Co.*, 2020 WL 13094954, at *1 (D. Md. May 20, 2020) (Bennett, J.) (approving a settlement that was the product of "many months of extensive arm's-length negotiations between Co-Lead Class Counsel and Defendants' Counsel under the auspices of [a] highly regarded mediator"), *aff'd*, *Banner Life*, 28 F.4th at 525-26.

Thus, the Settlement is procedurally fair under Rule 23(e) and the Fourth Circuit's *Jiffy Lube* factors.

**B.      The Settlement Is Substantively Adequate Under Rule 23(e) and *Jiffy Lube***

Rule 23(e)(2)(C) and (D) and the second part of the Fourth Circuit's *Jiffy Lube* analysis address the substantive adequacy of the settlement.  *See* Rule 23(e)(2)(C), (D) (courts must consider "(C) the relief provided for the class is adequate, taking into account: . . . the costs, risks, and delay of trial and appeal [among other things]; and (D) the proposal treats class members equitably relative to each other"); *Lumber Liquidators*, 952 F.3d at 484 (courts must consider "'(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement'") (alteration in original). These factors weigh strongly in favor of finding the proposed Settlement adequate.

**1.      The Settlement Adequately Reflects the Relative Strength of the Action on the Merits Given the Significant Risks Faced**

The $434,000,000 relief achieved, along with important corporate governance changes, is indisputably adequate: it is the second largest settlement ever achieved in a securities class action in the Fourth Circuit; it is among the top-50 largest settlements ever obtained in a securities fraud case; and it is a whopping ***48 times*** the $9,000,000 settlement obtained by the SEC.  ECF 430-1 at 2 n.4, 18.[10]  Beyond the significant Settlement Amount, Lead Plaintiff also obtained important non-monetary benefits for the Class.  Defendants agreed for a period of at least three years to: (1) separate Under Armour's Board of Directors Chair and Chief Executive Officer positions; and (2)

---

[10]      This extraordinary amount attests to the reasonableness of the Settlement.  *See Banner Life*, 28 F.4th at 527 ("To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, . . . it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial.").

add a performance-based vesting condition to all grants of restricted stock or restricted stock units to the Company's Chief Executive Officer, Chief Financial Officer, and Chief Legal Officer.  ECF 430-3 at ¶¶2.3, 2.4.  Such corporate governance reforms "provide valuable benefits."  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) (citing cases).

This Court must nevertheless "'weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'"  *Boyd v. Coventry Health Care*, 299 F.R.D. 451, 460 (D. Md. 2014) (Chasanow, J.).  Although Lead Plaintiff believed in the merits of its case, Defendants also believed in the merits of theirs.  Having completed fact and expert discovery, summary judgment, and trial preparation, Lead Plaintiff, through its experienced counsel, could thoroughly evaluate the relative strength of its case considering the risks of continued litigation.  These included the significant risks inherent in prosecuting Lead Plaintiff's claims against Defendants through trial and potential appeals, the inherent difficulties and delays complex litigation like this entails, and the many problems in proving the securities law violations alleged against significant defenses.  Courts give "'significant weight'" to this informed judgment of class counsel.  *MicroStrategy*, 148 F. Supp. 2d at 665.  Indeed, Rule 23(e)(2)(C)(i) and the second and third *Jiffy Lube* factors require courts to consider such risks – the "difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial" as well as the "costs, risks, and delay of trial and appeal" – in evaluating the relative strength of Lead Plaintiff's case.  Rule 23(e)(2)(C)(i); *Lumber Liquidators*, 952 F.3d at 484. These factors show the Settlement is substantively adequate.

### a.  Lead Plaintiff Faced Strong Defenses at Trial

Lead Plaintiff would have had the burden at trial of proving each element of its securities fraud claims over Defendants' defenses.  As the Fourth Circuit has recognized, the "substantive elements of a securities fraud claim are demanding."  *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d

618, 623 (4th Cir. 2008).  Indeed, either party here could have prevailed at trial.  *See, e.g.*, *In re Tesla Inc., Sec. Litig.*, 2023 WL 4032010, at \*1 (N.D. Cal. June 14, 2023) (the jury awarded a verdict for defendants on all counts even after plaintiffs had prevailed on summary judgment on most elements).

For instance, Lead Plaintiff would have to prove at trial not just that Defendants made false and misleading statements that were material to investors but that "Defendants knew – or were at least reckless as to their knowledge – that the relevant [statements or omission] were false at the time they were made."  ECF 173 at 6, 13.  Defendants would again argue that Under Armour was not obligated to disclose the Company's use of pull-forwards (ECF 323 at 22), claiming they were real sales to real customers, not illegal, and complied with GAAP (*id.* at 20).  Thus, Defendants would tell the jury that Lead Plaintiff's alleged misstatements could not be misleading and Defendants could not have acted with scienter by not disclosing the pull-forward practices to investors (*id.* at 35, 42-43).  Defendants would also argue again that Under Armour and Plank could not have acted with scienter given the Company still achieved impressive revenue growth targets notwithstanding the financial impact of the pull-forwards (*id.* at 43-45).  Defendants would likewise argue that defendant Plank's stock sales were made pursuant to a prearranged trading plan and thus could not be indicative of scienter (ECF 159 at 34).

Even if Lead Plaintiff proved liability, additional risks to proving loss causation and damages at trial would remain.  To prove loss causation, a plaintiff must show a causal connection between the material misrepresentation and the economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  Defendants would have renewed their attacks on the findings of Lead Plaintiff's loss causation and damages expert at trial.  If jurors found that Lead Plaintiff's expert's analysis did not sufficiently establish those two elements, then Defendants would have won at trial.  Defendants

- 19 -

would also have argued that the decline in demand for Under Armour's products was known to the market prior to the close of the Class Period, and thus the jury should find that the truth was in the market (ECF 323 at 52-54).  And even if the jury found Lead Plaintiff had met its loss causation and damages burden, it could have awarded less than the $434,000,000 Settlement.  In fact, Defendants' damages expert opined that Lead Plaintiff would not be able to prove *any* damages due to various purported flaws in Lead Plaintiff's expert's methodology.

Furthermore, the valuable corporate governance reforms Lead Plaintiff obtained – separating Under Armour's Board of Directors Chair and Chief Executive Officer positions and adding vesting conditions to certain executive stock grants, *see* ECF 430-3, ¶¶2.3, 2.4 – could not have been obtained at trial even if Lead Plaintiff prevailed.

### b.    The Settlement Eliminates the Additional Costs of Trial and the Risk of a Lengthy Appeal

The above issues demonstrate several real trial risks, and it is well-established that trying securities class actions is costly and time consuming.  *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 842 ("Taking this case through trial and any appeals would involve a great deal of effort and expense, especially in light of the unknown outcome of such actions.").

In addition to the costs and length of time, Lead Plaintiff's risk would endure even if it prevailed at trial on the merits because of the likelihood of an appeal.  *See MicroStrategy*, 148 F. Supp. 2d at 667 ("[T]here is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs."); *see also In re Merck & Co., Inc. Vytorin Erisa Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("'[E]ven a victory at trial is not a guarantee of ultimate success.  If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment.  An appeal

- 20 -

could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.'"). Lead Counsel is all too familiar with the perils faced by a verdict for Lead Plaintiff post trial and on appeal – even if just as to one element.  *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing judgment and remanding for new trial on loss causation).[11] And although Lead Counsel obtained a remarkable $1.575 billion recovery in *Household*, it came several long, litigation-filled years after the original verdict.

In sum, a potentially lengthy and uncertain trial and appeals process would not serve the interest of the Class given the immediate and substantial monetary and other benefits provided by the Settlement.  As in *MicroStrategy*, "the old adage, 'a bird in the hand is worth two in the bush,' applies with particular force here."  *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 904 (E.D. Va. 2001).

### 2. Under Armour Is Solvent, but There Could Be Risk of Recovering a Massive Judgment

The *Jiffy Lube* substantive adequacy analysis also requires courts to consider "the solvency of the defendant[] and the likelihood of recovery on a litigated judgment."  927 F.3d at 159.  Although Defendants' solvency is not in dispute, it is conceivable that a jury could have awarded Lead Plaintiff damages that matched or exceeded Under Armour's ability to pay.  Nonetheless, "given the other factors weighing in favor of the adequacy of the Settlement Agreement, this factor alone 'should not preclude final approval of the proposed Settlement.'"  *In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 459 (E.D. Va. 2023) (approving a settlement when "[t]he court does not

---

[11]     *See also, e.g.*, *In re BankAtlantic Bancorp, Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (overturning jury verdict and granting defendants judgment as a matter of law on basis of loss causation), *aff'd sub. nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (same).

find that the Defendants are at risk of insolvency and [plaintiffs] do not question the Defendants' solvency or their ability to pay a litigated judgment").

> ### 3. The Settlement Satisfies the Remaining Rule 23(e)(2) and *Jiffy Lube* Factors

> #### a. The Proposed Method of Distributing Relief to the Class Is Effective

As discussed in the Claims Administrator's declaration (Murray Declaration), Lead Plaintiff and Lead Counsel have made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, a total of 469,400 copies of the Notice Package were mailed or emailed to potential Class Members and nominees; the Summary Notice was published in the *WSJ* and transmitted over *Business Wire*; and the website created for this Action contains key documents, including the Settlement Agreement, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

The claims process here is identical to those used in most other securities class action settlements.  A potential class member will submit the Court-approved Proof of Claim.  Based on the trade information provided, the experienced Claims Administrator will calculate each eligible claimant's "Recognized Claims" and *pro rata* share of the Net Settlement Fund.  *See* Settlement Agreement, ¶5.7.  Authorized Claimants will be issued payments from the Net Settlement Fund.  If it would be feasible and economical to conduct a further distribution of any unclaimed funds, the Claims Administrator will conduct a subsequent distribution (less additional expenses).  Any *de minimis* residual will be donated to an appropriate and independent non-profit organization designated by, but unaffiliated with, Lead Counsel.  Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

- 22 -

**b.      The Proposed Award of Attorneys' Fees Is Reasonable**

Rule 23(e)(2)(C)(iii) requires courts to consider "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  The terms and details of the proposed award of attorneys' fees is set forth in the accompanying Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum").  As is typical and preferred in class cases in the Fourth Circuit, Lead Counsel's fee is a percentage based on the amount of the Class's recovery, after the Court approves the Settlement.  *See Boger v. Citrix Sys., Inc.*, 2023 WL 3763974, at *6 (D. Md. June 1, 2023) ("'In the Fourth Circuit, "the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees" in class actions.'").  The Settlement is not contingent on any particular fee award, and there is no hint of collusion. Accordingly, Rule 23(e)(2)(C)(iii) is satisfied.

**c.      The Parties Have No Other Agreements Besides One Concerning Opt-Outs**

Rule 23(e)(3) required the Parties to disclose any agreement made in connection with the proposed Settlement.  In its motion for preliminary approval, Lead Plaintiff disclosed that, in addition to the Parties' Memorandum of Understanding and the Settlement Agreement, the Parties entered into the Confidential Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement").  The Supplemental Agreement provided Defendants the option to terminate the Settlement if requests for exclusion from the Class exceeded a certain agreed-upon threshold, had the Court allowed a second opportunity to request exclusion.  *See* Settlement Agreement, ¶7.3.  The Court declined to provide a second opportunity to opt out, and the threshold exclusion was not reached.  Accordingly, the disclosed agreement is no longer relevant and does not affect the Court's finding the Settlement's proposed relief adequate under Rule 23(e)(2)(C)(iv).

- 23 -

#### d.      The Settlement Treats Class Members Equitably

As reflected in the Plan of Allocation (Murray Decl., Ex. A (Notice) at 5-9) and discussed below in §V, the Settlement treats Class Members equitably relative to each other.  Based on the amount and timing of their stock holdings, purchases, acquisitions, and sales, each Authorized Claimant shall receive its *pro rata* share of the Net Settlement Fund based on recognized losses pursuant to the Plan of Allocation approved by the Court.  Thus, the Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Class.

#### 4.      Class Members Support the Settlement

"The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though 'a settlement is not unfair or unreasonable simply because a large number of class members oppose it.'"  *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *see also Genworth*, 210 F. Supp. 3d at 842 ("A lack of objections to settlement by class members and opt-outs from the class demonstrates low opposition and weighs in favor of approving a settlement.").  Here, Lead Plaintiff and Class Representatives are institutional investors who support the Settlement.  *See* NESPF Decl., ¶4; Declaration of Michael Grodi in Support of Final Approval of Plaintiffs' Proposed Class Action Settlement on behalf of Monroe County ("Monroe County Decl."), ¶4 (Ex. B to the Henssler Decl.); and Declaration of Bart Elst in Support of Final Approval of Plaintiffs' Proposed Class Action Settlement on behalf of KBC ("KBC Decl.") (Ex. C to the Henssler Decl.), ¶4.  A total of 469,400 Notice Packages have been sent to potential Class Members and nominees.  Murray Decl., ¶11.  Although the time period for objecting to the Settlement – October 17, 2024 – has not yet passed, Lead Counsel has not received a single objection as of the date of this filing.  Lead Counsel will address objections, if any, in its reply

- 24 -

papers.  This preliminary absence of objections weighs in favor of the Settlement's adequacy. *MicroStrategy*, 148 F. Supp. 2d at 668.

*          *          *

Because the factors identified under Rule 23(e)(2) and *Jiffy Lube* are all satisfied, Lead Plaintiff respectfully asks the Court to approve the Settlement as fair, reasonable, and adequate.

## V.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Plan of Allocation establishes the method by which the Net Settlement Fund will be distributed to Class Members who submit valid Proofs of Claim.  A plan of allocation of settlement proceeds in a class action under Rule 23 is evaluated by the same standard applicable to the Settlement – the plan must be fair and adequate.  *Genworth*, 210 F. Supp. 3d at 842-43.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel, as here.  *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) ("[G]iven that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis.").

Here, the Plan of Allocation – set forth in full in the Notice mailed to Settlement Class Members (ECF 430-3 at 8-14) – is typical of such plans in securities class action cases.  All Class Members that were allegedly harmed as a result of the alleged misstatements and omissions, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the Plan.  Notice at 5-9; *see, e.g.*, *In re Peanut Farmers Antitrust Litig.*, 2021 WL 3174247, at *4 (E.D. Va. July 27, 2021) ("This type of distribution plan is commonly referred to as a *pro rata* distribution plan which has been previously approved by the Court in similar class action litigation.") (citing *MicroStrategy*, 148 F. Supp. 2d at 668).

- 25 -

The Plan of Allocation was drafted with the assistance of Lead Counsel's damages expert to fairly distribute the available Settlement proceeds based on Lead Plaintiff's theory of damages and consistent with Lead Plaintiff's allegations.  *See* Henssler Decl., ¶¶107-110.  Calculation of an Authorized Claimant's Recognized Loss Amount will depend upon several factors, including when the stock was held, purchased, acquired, or sold.  *Id.*, ¶109.  This method of distributing settlement funds is fair, reasonable, and adequate.  *See, e.g.*, *Peanut Farmers*, 2021 WL 3174247, at *4 (finding "Plaintiffs' *pro rata* distribution method is fair and reasonable"); *Genworth*, 210 F. Supp. 3d at 840 (approving plan of allocation that "distributes the net Settlement Fund on a *pro rata* basis, 'as determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all authorized claimants'"); *MicroStrategy*, 148 F. Supp. 2d at 668 (same); *In re Comput. Scis. Corp. Sec. Litig.*, 2013 WL 12155436 (E.D. Va. Sept. 30, 2013) (same).

## VI.   LEAD PLAINTIFF HAS PROVIDED NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

In granting preliminary approval of the Settlement, the Court approved Lead Plaintiff's proposed distribution and mailing of the Notice, which includes the information required by Rule 23 and the PSLRA (15 U.S.C. §78u-4(a)(7)).  *See* ECF 434; ECF 430-3.  Pursuant to this Court's order, and in compliance with Rule 23, Lead Plaintiff has provided "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

As detailed in the accompanying declaration of the Claims Administrator, as of October 2, 2024, a total of 469,400 copies of the Notice Package had been mailed to potential Class Members, brokers, and nominees; on August 19, 2024, the Summary Notice was published in the *WSJ* and transmitted over *Business Wire*; and on September 28, 2023, in connection with the mailing of the Notice of Pendency, the Claims Administrator established and continues to maintain a website dedicated to this Settlement (www.UnderArmourSecuritiesLitigation.com), where copies of the

Notice, Proof of Claim, Settlement Agreement, and Preliminary Approval Order (along with the un-redacted proposed amended complaint) are posted and available for download.  *See* Murray Decl., ¶¶11-14.  This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and set forth on internet websites, constitutes "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

## VII.    CONCLUSION

The outstanding Settlement far exceeds the requirements of fairness and adequacy, particularly given the arm's-length settlement negotiations; the advanced stage of litigation and the comprehensive discovery at the time of settlement; the presence of experienced counsel for all parties; the considerable risk, expense, and delay if the Action were to continue; and the substantial, certain, and immediate benefit of the Settlement to the Class.  The Plan of Allocation is equitable to Class Members and fair, reasonable, and adequate.  Therefore, and for all the reasons stated above and in the accompanying declarations and Fee Memorandum, Lead Plaintiff respectfully asks the Court to approve the Settlement and the Plan of Allocation.

DATED:  October 3, 2024                          Respectfully submitted,

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 MICHAEL J. DOWD
                                                 THEODORE J. PINTAR
                                                 MARK SOLOMON
                                                 X. JAY ALVAREZ
                                                 SAM S. SHELDON
                                                 ROBERT R. HENSSLER JR.
                                                 MATTHEW I. ALPERT
                                                 CHRISTOPHER R. KINNON
                                                 T. ALEX B. FOLKERTH


                                                        s/ Robert R. Henssler Jr.
                                                 ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
miked@rgrdlaw.com
tedp@rgrdlaw.com
marks@rgrdlaw.com
jaya@rgrdlaw.com
ssheldon@rgrdlaw.com
bhenssler@rgrdlaw.com
malpert@rgrdlaw.com
ckinnon@rgrdlaw.com
afolkerth@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY
ELIZABETH A. SHONSON
ANDREW T. REES
LUKE GOVEAS
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sastley@rgrdlaw.com
eshonson@rgrdlaw.com
arees@rgrdlaw.com
lgoveas@rgrdlaw.com

*Lead Counsel for Plaintiffs*

MOTLEY RICE LLC
JOSHUA C. LITTLEJOHN
CHRISTOPHER F. MORIARTY
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone: 843/216-9000
843/216-9450 (fax)
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for KBC Asset Management NV*

- 28 -

VANOVERBEKE, MICHAUD
  & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

*Additional Counsel for Monroe County
Employees' Retirement System*

SILVERMAN THOMPSON SLUTKIN
  & WHITE LLC
ANDREW C. WHITE, Bar No. 0821
WILLIAM SINCLAIR, Bar No. 28833
PIERCE C. MURPHY, Bar No. 30030
400 E. Pratt Street, Suite 900
Baltimore, MD  21201
Telephone:  410/385-2225
410/547-2432 (fax)
awhite@mdattorney.com
bsinclair@mdattorney.com
pmurphy@mdattorney.com

*Local Counsel*

- 29 -